**Richmond.**

TATE v. THE BANK OF THE STATE OF NEW YORK.

MARCH 9, 1899.

Absent, Buchanan, J.

1. EVIDENCE—*Examination of Witnesses—Re-Examination—Discretion of Trial Court.*—The examination of witnesses lies chiefly in the discretion of the trial court, and, while the practice of recalling witnesses for further examination in chief is not to be encouraged, this court will not reverse the judgment or decree of the trial court for this cause, unless the second examination was palpably improper.

2. PLEADING—*Action on Collaterals—Dismissal—Retraxit—Res Judicata—Discharge of Surety—Case at Bar.*—In an action against the maker and accommodation endorser of a negotiable note by one who held the note as collateral for a debt, the plaintiff, having received satisfaction of his debt from his original debtor, dismissed the action at the defendants' costs, with the knowledge and acquiescence of the endorsers. The collateral notes had, at that time, been transferred by the owner to the defendant in error, who was not a party to the action on the notes, and had no notice or knowledge of the pendency of the action.

   HELD: 1. This was not a *retraxit*.

   2. Nor an adjudication of the principles of the case, or the rights of the parties.

   3. Nor was it such a giving of time to the maker as to release the endorsers of the note.

3. RETRAXIT—*Dismissal by Nominal Plaintiff.*—A *retraxit* is an open and voluntary renunciation by the plaintiff in open court of his suit, and the cause thereof. A dismissal by a plaintiff who no longer has any interest in the cause of action is not a *retraxit*, and cannot prejudice the rights of the real owner of the subject of litigation, who is neither a party to the action nor a privy of the plaintiff.

Opinion.

4. RES JUDICATA.—In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits.

5. APPEAL AND ERROR—*Objection for First Time—Alteration of Note.*—The objection that a material alteration has been made in a note in suit cannot be made for the first time in the appellate court.

Error to a judgment of the Corporation Court of the city of Lynchburg rendered July 3, 1897, in a proceeding by motion for a judgment wherein the defendant in error was the plaintiff, and the plaintiff in error was one of the defendants.

*Affirmed.*

The opinion states the case.

*Caskie & Coleman,* for the plaintiff in error.

*Blackford, Horsley & Blackford,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

September 14, 1896, B. E. Hughes made his two notes to the order of J. Emory Hughes, one for $1,400, and the other for $1,450, payable four months after their date, at the Traders Bank, of Lynchburg, Va., and both notes were endorsed by J. Emory Hughes and J. D. Tate for the accommodation of the maker, and discounted at the said bank.

Before maturity, the notes were also endorsed by the Traders Bank, of Lynchburg, and turned over to the Third National Bank, of New York, as collateral security, with other notes, for a loan by the last named bank to the Traders Bank, of Lynchburg.

In December, 1896, the Traders Bank, of Lynchburg, gave an order to the Bank of the State of New York upon the Third National Bank, of New York, for the collateral held, including the two notes in question, to be delivered after the Third National Bank was paid the indebtedness due it from the Traders Bank, of Lynchburg.

Both of the collateral notes, aggregating $2,850, having been protested, and there being a balance of about $2,200 due on the note of the Traders Bank, of Lynchburg, to the Third National Bank, of New York, for which these notes were held as collateral, the Third National Bank brought its action, by notice and motion under the statute, at the March term, 1897, of the Corporation Court of the city of Lynchburg, against the maker and endorsers of the two notes, instead of upon the note of the Traders Bank, of Lynchburg, for which the two notes were held as collateral.

The Traders Bank, of Lynchburg, having paid $2,150 in cash on its note held by the Third National Bank (not on the two notes in suit), and the Third National Bank having collected, through its counsel, between $150 and $200 on another note also held by it as collateral for the note of the Traders Bank, of Lynchburg, these sums overpaid the balance due the Third National Bank on the note of the Traders Bank, of Lynchburg, and costs of suit and collection. The costs not having been paid before the court adjourned its March term, 1897, the suit was dismissed, with a judgment against the defendants for costs; the following order being entered in the case:

" On motion of the plaintiff, it is ordered that this motion be dismissed, and the plaintiff recover against the defendants the costs about its motion in this behalf expended."

The two notes, upon which the suit dismissed was brought, were then turned over to the Third National Bank, to be delivered by it to the Bank of the State of New York, in pursuance of the order of the Traders Bank, of Lynchburg, in December, 1896, and, in accordance with an agreement between the parties interested, to the effect that, when the Third National Bank was paid the original debt it held against the Traders Bank, of Lynchburg, the suit was to be dismissed, and the two notes in question turned over to the Bank of the State of New York.

This having been done, and the two notes not having been paid, the Bank of the State of New York brought its action to

the June term, 1897, of the Corporation Court of Lynchburg
on each of the notes, by notice and motion under the statute,
against B. E. Hughes, as the maker, and J. D. Tate and the
Traders Bank, of Lynchburg, as endorsers of the notes, which
motions were heard together as to the defendant Tate, he alone
making defence thereto, and, both parties agreeing, all matters
of law and fact involved in the motions were submitted to and
determined by the court, without a jury, resulting in a judg-
ment against the defendant, Tate, for the amount of the two
notes, with interest and costs, to which judgment a writ of
error was awarded by this court.

The first exception taken by the defendant is to the refusal
of the court below to sustain the objection of the defendant to
the introduction and further examination of a witness, J. G.
Haythe, after he had been examined, cross-examined, and told
to stand aside, and after he had held a whispered conversation
or consultation with plaintiff's counsel.

The practice here complained of is not without objection and
should not be encouraged, but, as was said by this court in the
case of *Burke* v. *Shaver,* 93 Va. 352, citing *Brooks* v. *Wilcox,* 11
Gratt. 411, and *Fant* v. *Miller,* 17 Gratt. 187, the subject of the
examination of witnesses lies chiefly in the discretion of the
court in which the case is tried, and its exercise is rarely, if
ever, to be controlled by an appellate court. Unless it is pal-
pably improper to grant leave for the second examination of a
witness, an appellate court will not, for this cause, reverse the
decree or judgment, as the trial court ought to possess much
latitude of discretion in the decision of such questions.

That the plaintiff in error was prejudiced by the recall of the
witness, Haythe, is not made to appear, and therefore we can-
not hold that it was palpably improper for the court below to
overrule the objection to the second examination of the witness.

The next contention of the plaintiff in error, arising under
his second bill of exceptions to the ruling of the court below, is
that the proceedings and judgment in the suit of the Third

National Bank, of New York, against the plaintiff in error and others, dismissed at the March term, 1897, of the Corporation Court of the city of Lynchburg, afforded an absolute and conclusive bar to any further recovery against him upon the notes then in suit; first, because the order dismissing that suit was a *retraxit* by the plaintiff, or it was a final and complete adjudication by the court of the matter in controversy, viz. : the two notes, the subject of this suit, and that in either case the cause of action is forever extinguished; and further, that plaintiff in error was discharged from liability upon the two notes in question because the object and effect of the arrangement entered into and carried out by and between the plaintiff in the first suit (Third National Bank, of New York,) and the Traders Bank, of Lynchburg, and B. E. Hughes (the maker of the notes), was to extend time to the maker, whereby plaintiff in error was discharged from further liability as endorser of the notes.

Was the order dismissing the first suit a *retraxit*, or a final and complete adjudication by the court of the matter in controversy ?

The order dismissing the first suit was not a *retraxit*, and, as we shall presently see when we come to consider the evidence in this case, was not so intended; but the dismissal was by agreement between Third National Bank (the plaintiff) and the Traders Bank, of Lynchburg (a defendant), known to and acquiesced in by plaintiff in error, and to which the defendant in error (the Bank of the State of New York) was not a party.

If the Third National Bank could have maintained its suit after it had been fully paid the balance of its debt to secure which it held the two notes then in suit, it could only have been maintained for the benefit of the party who was entitled to the collateral notes after it, the Third National Bank, had been paid, viz. : defendant in error, the Bank of the State of New York.

The defendant in error was not a party to the first suit, had

no notice or knowledge of its pendency, and, for the Third National Bank and the defendants to its suit to have dismissed the suit so as to preclude the Bank of the State of New York, defendant in error, would have been in fraud of the rights of the latter.

"A nominal plaintiff, suing for the benefit of his assignee, cannot, by a dismissal of the suit under a collusive agreement with the defendant, create a valid bar against any subsequent suit for the same cause of action." 7 Rob. (New) Pr., p. 903–4; *Welch* v. *Mandeville*, 1 Wheat. 233.

In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect of pleadings, or parties, or a misconception of form of proceedings, or want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit. *Hughes* v. *United States*, 4 Wall. 237.

In the case before us, the defendant in error does not hold the notes in suit through the Third National Bank, plaintiff in the first suit, and, therefore, is not a privy. It holds through the Traders Bank, of Lynchburg, and the prior endorsers of the notes.

In the case of *Coffman, &c.* v. *Russell*, 4 Munf. 207, it was held that a dismission of a suit by the plaintiff's order is no bar to his bringing another suit for the same cause of action, even though there was a judgment by the court for the defendant against the plaintiff for costs.

In *Muse* v. *Farmers Bank*, 27 Gratt. 257, the court held that a dismissal of a case, or a discontinuance, is not a *retraxit*, saying: "But clearly the order in question was not a *retraxit*, as that can only be entered by the plaintiff in open court," and, in dealing with the question of discontinuance, says: "The judgment in the same case is no more than an agreement not to

proceed further in that suit against the particular defendant. Such judgment is not a bar to any future action against the same parties."

A *retraxit* is an open and voluntary renunciation by the plaintiff in open court of his suit, and the cause thereof. The usual and proper order, where there is a *retraxit*, is as follows : "This day came the plaintiff in his proper person, and here in open court acknowledges that he cannot support his action, and voluntarily withdraws the same, and renounces the cause thereof; wherefore on motion of the defendant by his attorney, it is considered by the court that the plaintiff take nothing by his bill, but for his false clamor be in mercy, etc., and that the defendant go thereof without day, and recover against the plaintiff his costs by him about his defence expended." Rob.'s Forms, p. 96.

"It differs from a non-suit," says the court in *Hoover* v. *Mitchell*, 25 Gratt. 390–91, "in that the one (the latter) is negative, and the other (the former) is positive."

But surely it cannot be said that a dismissal of a suit by a plaintiff who no longer has a right to a judgment upon the cause of action sued on, but this right is then in another, who is not a party to the suit or a privy of the plaintiff, is a *retraxit*, whereby the party having the right to the subject-matter of the suit is absolutely and forever barred from bringing another action thereon.

It is well said by counsel for defendant in error, if the judgment on the motion of the Third National Bank (first suit) precludes any further recovery on these notes, then these notes, which were due beyond question to the Traders Bank, of Lynchburg, by its vice-president, director and member of its finance committee, B. E. Hughes; its counsel, J. Emory Hughes, and J. D. Tate—its directors and members of its finance committee—would be extinguished without payment to the Traders Bank, of Lynchburg, or its assignee.

Much that has been said goes to answer the contention of plaintiff in error, that he was discharged from further liability

upon the notes in suit because the agreement by which the first suit was dismissed had the effect to *extend time to the maker* of the notes, which contention is upon the ground that a judgment at that time would have been good against the maker of the notes, whereby the endorsers of the notes would have been protected.

As we have seen, when the first suit was dismissed, the plaintiff, the Third National Bank, had been paid the debt due it, to secure which the notes in suit were held. In a court of law, a defendant cannot be changed to a plaintiff, and the Traders Bank, of Lynchburg, the last endorser on the notes, could not be made a plaintiff. The Bank of the State of New York could not have been substituted as plaintiff even if it had been notified of the situation. Therefore there could not have been a judgment upon the notes when the first suit was dismissed. Moreover, it is abundantly shown that the court below was justified in taking the view that, as plaintiff in error was anxious to avoid a judgment against himself and the Traders Bank, of Lynchburg, in which he was a director and member of the finance committee, all that was done or agreed on, resulting in a dismissal of the suit, was with his knowledge and acquiescence. Here, then, was a suit to which all the parties to the notes were parties defendant, and, in open court, the suit was dismissed by the plaintiff, who had no further interest, and with the approval of the maker and endorsers of the notes sued on. Under such circumstances, the dismissal of the suit could not be regarded as a *retraxit* or an adjudication by the court of the matter in controversy; nor would it for one moment be regarded as a discharge of the endorsers because the dismissal extended time to the maker of the notes.

We have not deemed it necessary to discuss the question whether or not a dismissal of a suit upon a protested note will constitute a bar to any future action against the endorser because the dismissal operates to extend time to the maker. If such be the law, as to which we need not express an opinion,

it has no application to the case at bar, and to no case in which the dismissal was by a plaintiff having no further interest in the suit, with the approval of the endorsers of the note sued on.

Upon the evidence in this case, viewed from any standpoint, but certainly when viewed, as we must upon this writ of error, as upon a demurrer to evidence, it clearly appears that the dismissal of the suit of the Third National Bank was with the understanding that the notes sued on were to be delivered to the defendant in error; that this understanding was concurred in by the plaintiff in error, and that he recognized that such was the agreement and understanding after the notes had been turned over to defendant in error.

The evidence shows that plaintiff in error was present when the representative of the Third National Bank, of New York, turned the notes over to counsel to get judgment thereon, if they were not paid, and then said that he did not want a judgment to go against him, and that the matter would be settled before the court adjourned; that he several times came to the office of the counsel for the plaintiff in the first suit to see what was being done about the matter, and was informed of the situation; that, in fact, plaintiff in error was fully advised of everything being done, and of the rights of defendant in error to the notes when the Third National Bank was paid the debt for which the notes were held as collateral, and its suit dismissed, and that he made enquiry from time to time, during the court, as to how the Traders Bank was getting on paying the Third National Bank. He testifies, in his own behalf, that he thought B. E. Hughes, the maker of the notes, was paying them to the Third National Bank, and that the notes had been paid off, until he was informed by letter from counsel for defendant in error that they held the notes for collection; but on cross-examination he admits that he had always said to counsel for defendant in error that he would pay these notes, and that the suit had been delayed during the term of the court at which the trial was had, in order for him to make his arrangements to do so.

The point made by plaintiff in error that there appears to have been a material alteration in each of the notes in question, in that the notes are written on printed forms for notes payable at the National Exchange Bank, while it appears that the printed words " National Exchange " have been erased in each note, and the word " Traders " written in ink in lieu of the words so erased, is without merit.

There was no issue made as to the genuineness of the notes before or at the trial, although plaintiff in error had seen the notes when placed in the hands of counsel for suit in the first instance, and, besides, admits that he had always said to counsel for defendant in error that he would pay the notes, and that a trial of the case was delayed in order to give him time to arrange to do so.

We are of opinion that there is no error in the judgment complained of, and, therefore, it is affirmed.

*Affirmed.*