# Richmond

WHEELER AND OTHERS v. THOMAS AND OTHERS

AND

THOMAS AND OTHERS v. WHEELER AND OTHERS

March 12, 1914.

Absent, Cardwell, J.

1. APPEAL AND ERROR—*Records—How Brought Up—Cross-Error.*—
Ample provision is made by the statute to have so much of
the record as is necessary to fairly present the whole case to
the appellate court brought up, and the right of the appellee
to assign cross-error is safe-guarded by Rule VIII of the rules
adopted by this court. This is the usual and orderly method
of procedure and the practice adopted in this case, whereby
the record of the trial court was divided and one part of it
brought up by an appeal by one party and the other part by
an appeal by another party, is disapproved.

2. INSANE PERSONS—*Suit to Sell Lands—How Brought—Failure to
Follow Statute—Void Proceedings.*—A suit for the sale of the
lands of persons under disability brought under chapter 117
of the Code must substantially comply with the provisions of
the statute otherwise the proceeding will be void. If a suit
for the sale of the lands of an insane person be brought un-
der section 2616 of the Code, then the requirements of the
other sections of chapter 117 of the Code must be complied
with, and if such suit can be brought under section 2436-b of
the Code (1904) then the procedure must conform to sections
2433, 2434 and 2435 of the Code, neither of which was done in
the case in judgment.

3. INSANE PERSONS—*How Sue—Statutory Proceedings.*—An insane
person may sue by next friend when the suit is brought under
the general jurisdiction of the court, for example, a suit to set
aside a deed for fraud, but this rule has no application to a
suit brought under a statute which confers the jurisdiction
and at the same time prescribes the mode of procedure as in
case of sales of land of insane persons.

4. JUDGMENTS—*Res Judicata—Collateral Attack.*—A judgment on the merits, fairly rendered, by a court of competent jurisdiction, having cognizance both of the parties and the subject matter, however erroneous it may be, is conclusive on the parties and their privies until reversed or set aside in a direct proceeding for that purpose, and is not amenable to collateral attack.

Appeals from a decree of the Circuit Court of Fauquier county.

*Reversed in part.*

By the will of T. W. Buckley, late of Prince William county, deceased, testator devised a tract of 250 acres of land in the neighborhood of the village of Catharpin, in that county, to his wife, Mary E. Buckley, for life, with remainder in fee to his only daughter, Alma Thomas, wife of C. L. Thomas. These parties are non-residents of the State of Virginia, living at Montgomery, Penna. Mrs. Buckley is a person of unsound mind, but no committee has ever been appointed for her, either in Virginia or elsewhere. Mrs. Thomas had had charge of the farm and rented it out and collected the rents and provided for her mother.

In January or February, 1909, Mrs. Thomas wrote a letter to the firm of Davies and Davies, lawyers, at Manassas, Prince William county, Virginia, requesting them to look out for a purchaser for the farm. J. Jenkyn Davies and his brother, H. Thornton Davies, composed the firm of Davies & Davies; and their predecessors, Thornton & Davies, which consisted of Judge Thornton and his nephew J. Jenkyn Davies, had been attorneys for Mrs. Buckley and Mrs. Thomas, attending to their legal business in Prince William county. Before placing the farm in the hands of Davies & Davies, Mrs. Thomas had made an unsuccessful effort to dispose of it

herself, advertising it for sale in a local newspaper. Shortly after receiving Mrs. Thomas' letter, J. Jenkyn Davies visited the property and tried to sell it to C. E. Ellison, the tenant, and to E. N. Pattie, and also to F. H. Sanders who owned adjoining land, and others, but he obtained no offer from any of these parties of more than $15.00 an acre. On his way home Davies met W. M. Wheeler, who lived in the vicinity of the land, and attempted to negotiate a sale to him, which finally resulted in a proposal by Wheeler to pay $16.00 an acre for the land; but his offer was coupled with the condition that if his bid should be accepted by Mrs. Thomas that Davies would take a one-half interest in the property.

On the next day Davies informed Mrs. Thomas by letter of Wheeler's proposal, and explicitly told her the condition on which it was made, and that if his offer was accepted she must understand that he (Davies) might become a joint purchaser with Wheeler. After this letter had been mailed to Mrs. Thomas, but before her reply had been received, Davies & Davies learned that C. E. Ellison, the tenant, might be willing to increase his former bid of $15.00 an acre for the farm. Thereupon J. Jenkyn Davies made an appointment with Ellison to meet him at Manassas a day or two later to discuss the matter further. In the mean time he had received a letter from Mrs. Thomas accepting Wheeler's proposition; but owing to Wheeler's absence, Davies met Ellison before Mrs. Thomas' acceptance had been communicated to Wheeler. At that interview Davies explained the situation to Ellison, and told him that if he would make a better bid than Wheeler's he would withhold Mrs. Thomas' letter and communicate his offer to her by telegraph, and await her reply. After some hesitation Ellison declined to give more than $16.00 an acre. Davies also tried to secure advance bids from other persons, but

received none in excess of $16.00; and he afterwards communicated Mrs. Thomas' acceptance to Wheeler.

In view of Mrs. Buckley's mental condition, legal proceedings were necessary to pass her title to the purchaser, and Mrs. Thomas authorized and directed Davies to institute suit for that purpose. Accordingly Davies & Davies filed a bill in the Circuit Court of Prince William county in the name of Mary E. Buckley, by her next friend Alma Thomas, against the said Alma Thomas and C. L. Thomas, her husband, to ratify the sale to Wheeler. The case was docketed by consent of parties at the April term, 1909, and at that term a final decree was entered confirming the sale to Wheeler and appointing H. Thornton Davies a special commissioner to convey the land to him after the same had been surveyed and the purchase price fully paid.

When J. Jenkyn Davies informed Wheeler that Mrs. Thomas had accepted his bid, Wheeler stated that the purchase price was more than he could handle conveniently for cash, and that he would expect Davies to take a half interest in the land. After the sale was confirmed, the county surveyor of Fauquier county made the survey. The farm was acquired from three different persons and was so recorded; and by direction of J. Jenkyn Davies, though the parcels were contiguous, they were surveyed separately.

On May 7, 1909, Mrs. Thomas wrote a letter to Davies & Davies acknowledging the receipt of statement and check for the purchase money, in which she thanked them for their promptness and interest in settling up the matter; and concludes: "If there is ever any other business I wish done in Va. will call on you."

As before remarked, the land adjoins the village of Catharpin, and at the time it was placed in the hands of J. Jenkyn Davies for sale there was but one store at that

place. The store house was owned by F. H. Sanders, a brother-in-law of Wheeler, and was operated by Sanders and E. N. Pattie, a nephew of Wheeler and Sanders. C. L. Lynn, also a brother-in-law of Wheeler and Sanders, was a clerk in the store. It will be remembered that Davies had offered the property to Sanders and Pattie prior to the sale to Wheeler, but neither manifested any special interest in the matter at that time. After the sale to Wheeler, but before confirmation, Sanders, Pattie and Lynn each made offers to Davies to buy small portions of the land contiguous to Catharpin at prices somewhat in advance of $16.00 per acre; and later on it developed that friction had arisen between Sanders and Pattie, and a dissolution of the partnership was imminent. It was also rumored that Pattie would establish a rival store if he could secure a proper building site. The situation became more acute, and Sanders, Pattie and Lynn, secretly, without the knowledge of each other, approached Wheeler and sought to obtain the refusal of that part of the land adjacent to Catharpin. Wheeler then decided to divide the land adjoining the village into two parcels and to sell the property at public auction, and so notified Sanders, Pattie and Lynn. This plan was carried into effect in May, 1909, and resulted in the sale of a twenty-five acre parcel to Pattie at $62.00 per acre; C. L. Lynn bought sixty-three acres at $37.50 per acre; and Ellison subsequently bought the residue of the farm at $18.00 per acre.

It is conceded that the prices obtained at the auction sale were largely in excess of the actual value of the property, and that the result was due to the peculiar situation and rivalry among the bidders. Pattie and Ellison each complied with the terms of his purchase; but Lynn refused to comply, on the ground that he had been advised that the proceedings in the suit to confirm

the sale to Wheeler were void, and that he could not get a marketable title. It also appears that Lynn at that time was carrying on a secret correspondence with Mrs. Thomas, and ultimately induced her to believe that she had been defrauded in the land sale by Davies and Wheeler. Lynn offered to assist her in having the sale set aside, and entered into a written contract with Mrs. Thomas agreeing to bear one-half of the expense of the litigation, and in the event of success to buy the property at $5,000.

In furtherance of her agreement with Lynn, Mrs. Thomas caused two actions of ejectment to be brought in the Circuit Court of Prince William county in the name of Mary E. Buckley, an insane person, who sued by her next friend, F. C. Rorabaugh—one against C. E. Ellison, and the other against Pattie, to recover the parcels of land purchased by them, respectively. At the trial of those actions, on pleas of the general issue, neither party desired a jury and agreed to submit all questions of law and fact to the court; and the court having heard the evidence and agreed statement of facts, found for the defendant in each case and rendered judgment accordingly. Leave to file bills of exceptions were taken by the plaintiff, and the bills were prepared, but writs of error were never applied for, and more than a year has elapsed since final judgments were rendered in the two actions.

In November, 1910, the bill in chancery in the present case was filed in the same court by Mary E. Buckley, an insane person, by C. H. Thomas, her next friend, and Alma Thomas and C. L. Thomas, her husband, against W. M. Wheeler and the personal representative and heirs at law of J. Jenkyn Davies (who had in the mean time died), Pattie, Lynn and Ellison. The bill charged fraud on the part of J. Jenkyn Davies and Wheeler and the firm of Davies & Davies in the matter of the sale and

purchase of the land, alleging that J. Jenkyn Davies, without the knowledge of Mrs. Thomas, was a partner of Wheeler in his purchase, and had fraudulently concealed from her the real value of the property. Upon that ground, and for the further reason that the proceedings in the suit to confirm the sale were void upon their face for non-compliance with the statute, the bill prayed that the sale to Wheeler might be vacated and annulled. Some of the defendants answered the bill at great length, controverting the allegations of fact and conclusions of law drawn therefrom, and relying among other matters upon the defense of *res adjudicata* as a bar to the recovery of the life estate of Mrs. Buckley in the parcels of land sold by Wheeler to Pattie and Ellison. The case having been removed to the Circuit Court of Fauquier county, the decree under review was entered by that court on October 1, 1912.

The decree, in part, was as follows: ". . . the court after mature consideration is of the opinion and doth so decide that none of the allegations of fraud contained in said bill are sustained, but that the entire good faith of the defendants is established . . . that the proceedings had in the Circuit Court of Prince William county in the chancery suit styled Mary E. Buckley by her next friend Alma Thomas against Alma Thomas and C. L. Thomas and the decrees in said cause involving the sale of the real estate in the bill and proceedings mentioned were null and void in so far as the same involved the life estate of the insane plaintiff, Mary E. Buckley, because the said court was without jurisdiction to sell her said life interest in said suit, and the deed made pursuant to the decree in said suit is null and void, doth so decree, and being further of opinion that the question of the validity and invalidity of the said proceedings and the decrees and the deed executed pur-

suant thereto is not *res adjudicata* under the two judgments of the Circuit Court of Prince William county in the two ejectment suits," it further annulled the said decrees "in so far as they confirm the sale of any interest of the said Mary E. Buckley in and to the said land," and declared: "but the court does not at this time determine or undertake to determine to what extent the said Alma Thomas is bound by the proceedings in said cause or by the said conveyance or to what extent her interest is bound thereby;" and it further directed, "that the complainant, Alma Thomas, as receiver in the chancery suit of *Thomas* v. *Ellison* . . be put in possession of the said real estate in the bill and proceedings mentioned . . and without passing upon any of the other questions in issue in this case at this time . ." directed that "the cause be referred to one of the master commissioners . . to ascertain and report . . the fair annual value of the real estate since the purchase thereof by the said W. M. Wheeler, in whose possession it has been, and what, if any, rent should be paid by the tenants thereof and to whom, and . . the value of all timber cut or removed from the said real estate, . . what if any permanent improvements have been placed upon said land since the sale, by whom the same were put thereon, the fair value thereof, and the interest of the insane plaintiff in regard thereto."

*Moore, Barbour, Keith & McCandlish,* for Wheeler and others.

*Thomas H. Lion* and *John M. Johnson,* for Thomas and others.

Whittle, J., (after making the foregoing statement) delivered the opinion of the court.

The decree of the Circuit Court of Fauquier county is made the subject of attack on one record in two separate appeals. The record, for that purpose, was divided, part of it was brought up by the appellants in the first appeal and the rest of it by the appellants in the second appeal (the positions of the parties being transposed in the two appeals).

Ample provision is made by statute to have so much of the record as is necessary to fairly present the whole case to the appellate court brought up, and the right of the appellee to assign cross-error is safeguarded by Rule VIII of the rules adopted by this court. That is the usual and orderly method of procedure, and the practice pursued in this case is disapproved.

The assignment of error by appellants in record No. 761 (*Thomas* v. *Wheeler*) is to that part of the decree under review which declares, that "the court after mature consideration is of the opinion and doth so decide that none of the allegations of fraud contained in said bill are sustaied, but that the entire good faith of the defendants is established."

The history of this controversy given in outline in the statement of the case renders a further review of the evidence unnecessary. It is sufficient to say that the whole of it has received at our hands careful consideration, and that we fully concur in the conclusion reached by the learned circuit court on that branch of the case.

The principal assignment of error made by appellants in record No. 703 (*Wheeler* v. *Thomas*.) is to the conclusion of the circuit court that the proceedings in the suit of "Mary E. Buckley by her next friend, Alma Thomas, against Alma Thomas and C. L. Thomas, and the decrees in the said cause involving the sale of the real estate in the bill and proceedings mentioned were null and void in so far as the same involved the sale of

the life estate of the insane plaintiff, Mary E. Buckley, because the said court was without jurisdiction to sell her said interest in said suit and the deed made pursuant to the decree in said cause is null and void.''

The suit was brought under chapter 117 of the Code, which provides for the sale of lands of persons under disability.  So much of section 2616 of that chapter as is pertinent to the case in judgment provides, that if the committee of any insane person thinks that the interest of such person will be promoted by the sale of his estate, or estate in which he is interested with others, whether there be or be not limited thereon any other estate, vested or contingent, and whether the committee of the insane person, or any of the persons interested, reside in this State or not, may for the purpose of obtaining such sale, file a bill in equity in the circuit court of the county in which the estate proposed to be sold, or some part thereof, may be, stating plainly all the estate, real and personal, belonging to such insane person, and all the facts calculated to show the propriety of the sale.  The bill shall be verified by the oath of the plaintiff, and the insane person shall be made defendant and all those who would be his heirs or distributees if he were dead.

Section 2618, so far as applicable, declares that to every insane defendant there shall be appointed a guardian *ad litem,* who shall answer the bill on oath in proper person; and section 2619 prescribes that no deposition shall be read in the suit against any insane party, unless it be taken in the presence of the guardian *ad litem* or upon interrogations agreed on by him.

In the instant case practically every requirement of the statute was disregarded.  (1) The suit was not brought by the committee of Mrs. Buckley, but by her next friend; (2) The bill does not state plainly all the estate, real and personal, belonging to the insane person,

nor does it state all the facts calculated to show the propriety of the sale; (3) The insane person was not made defendant; (4) No guardian *ad litem* was appointed for the insane person, and, of course, no answer was filed by a guardian *ad litem;* and (5) the case was heard on *ex parte* affidavits.

The latest case in which this court has had occasion to construe the foregoing statute is *Coleman* v. *Va. Stave Co.*, 112 Va. 61, 70 S. E. 545. There the court was dealing with the sale of timber on the land of infants, and it was held that a court of equity had no authority under its general jurisdiction as guardian of infants to sell their real estate whenever it was to the advantage of the infants to do so, whether for reinvestment or for their maintenance and education. That "When a new jurisdiction is created by statute, and the mode of acquiring and exercising that jurisdiction by the court upon which it is conferred is prescribed by statute, a substantial compliance therewith, at least, is essential, otherwise the proceeding will be a nullity." It was further held, that "A failure to aver what property the infant owned besides that sought to be sold, and to produce any proof of the propriety of the sale, is not a substantial compliance with the provisions of that chapter, and a sale based thereon is a nullity. *Ex parte* affidavits are not admissible as evidence of the propriety of the sale in such a case."

That case received careful consideration and we have no disposition to relax the rules of procedure there insisted on in suits for the sale of lands of persons under disability. The departure from the requirements of the statute were far less flagrant in that case than in this, and the decision there is conclusive against the validity of the decree of the Circuit Court of Prince William county confirming the sale of Mrs. Buckley's life estate in the land in controversy.

But we are told that the suit could be maintained under section 2436-b. If that contention be correct, as to which we express no opinion, the section in terms provides that the procedure shall conform to sections 2433, 2434 and 2435, and the requirements of those sections were wholly ignored.

The case of *Jackson* v. *Counts,* 106 Va. 7, 54 S. E. 870, and other authorities are cited for the proposition that an insane person may sue by next friend. That is unquestionably true in cases arising under the general jurisdiction of courts of equity. For example, the case of *Jackson* v. *Counts* (like the present case) was a suit to set aside a deed on the ground of fraud. But the general rule has no application where the statute which gives the jurisdiction prescribes the procedure. In such case the statutory procedure must be followed and substantially complied with. *Coleman* v. *Va. Stave Co., supra; Link* v. *Saunders,* 114 Va. 285, 76 S. E. 327.

The remaining assignment of error denies the correctness of the holding of the circuit court in the decree appealed from, ''that the question of the validity and invalidity of the said proceedings and the decrees and the deed executed in pursuance thereof is not *res adjudicata,* under the two judgments of the Circuit Court of Prince William county in the two ejectment suits recently therein pending under the style of *Mary E. Buckley, by etc.* v. *W. M. Ellison,* and the *Same* v. *Pattie,* and doth so adjudge, order and decree.''

It will be recalled from the statement of facts that Ellison and Pattie each bought from Wheeler a parcel of the Buckley land and paid the purchase money and received his deed and was put in possession. Mrs. Buckley, by her next friend, instituted actions of ejectment against these parties to recover her life estate, the defendants plead not guilty, and at the trial neither party desiring a jury

and submitting all disputed questions of law and fact to the court, and the court having heard the evidence and agreed statement of facts found for the defendant in each case, and final judgments were entered accordingly. To neither of these judgments was a writ of error sought or obtained, and they stand unreversed, and unassailed save collaterally in the present case.

In these actions the judgments were rendered by a court of competent jurisdiction, having cognizance both of the parties and the subject matter. When these requisites concur, the judgment of such a tribunal fairly rendered upon the merits, however erroneous it may be, is conclusive on the parties and their privies until reversed or set aside in a direct proceeding for that purpose, and is not amenable to collateral attack. *Chrisman* v. *Harman,* 29 Gratt. (70 Va.) 494. 26 Am. Rep. 387; *Diamond, &c. Co.* v. *Rarig,* 93 Va. 595, 25 S. E. 894; *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337; *Tate* v. *Bank,* 96 Va. 765, 32 S. E. 476; *Dillard* v. *Dillard,* 97 Va. 434, 34 S. E. 60; *Richmond* v. *Sitterding,* 101 Va. 354, 43 S. E. 562, 65 L. R. A. 445, 99 Am. St. Rep. 879; *Martin v. Columbian Paper Co.,* 101 Va. 699, 44 S. E. 918.

For these reasons the decree of the circuit court must be reversed so as to conform to the views of this court with respect to the conclusive effect to be given to the judgments in the action of ejectment, and in all other respects it will be affirmed. And the case will be remanded to the circuit court for further proceedings to be had therein not in conflict with the views expressed in this opinion.

*Reversed in part.*