# Richmond

JOHN HAMILTON FISHER AND DOUGLAS LEE FISHER V. B. P.
HARRISON, TRUSTEE IN BANKRUPTCY OF W. LEE FISHER.

November 14, 1935.

Present, Campbell, C. J. and Hudgins, Gregory, Browning, Chinn
and Eggleston, JJ.

The opinion states the case.

*R. Gray Williams* and *Kuykendall & Benham,* for the appellants.

*Harrison & Harrison,* for the appellee.

Eggleston, J., delivered the opinion of the court.

This is a suit in chancery brought by B. P. Harrison, Trustee in Bankruptcy of W. Lee Fisher, to subject to the payment of Fisher's debts certain property which, it is claimed, he acquired under the will of J. T. Fisher, deceased. The claimants of the property, other than W. Lee Fisher, are made parties defendant to the bill.

The sixth clause of the will is as follows:

"Sixth: I give and devise to my nephew, W. Lee Fisher, my brick store building and lot known as the 'Eddy property' situated on corner of North Market and Baker streets, Winchester, Virginia; my coal yard property situated on Baker street on east side of B. & O. R. R. the house and lot on Highland avenue adjoining Wisecarver property now occupied by Dusing to have and hold the same for life then to pass to his children. This devise is subject, however, to this provision that he shall pay to my wife Belle C. Fisher every year as long as she lives three hundred dollars ($300.00) which payment is hereby made a lien upon said property. This devise is also made subject to this provision that if there should be a separation between my said nephew and his wife in their lifetime that immediately upon such separation all interest of said W. Lee Fisher in said property shall cease and said property shall then be held in trust by my niece, Ida Fisher, who shall collect all rents, pay all taxes, insurance and repairs, the annuity of three hundred dollars annually to my wife and shall expend the balance in the support and education of the children of said W. Lee Fisher while they are under the age of twenty-one years. I give to my said nephew, W. Lee Fisher, my patent on car coupling."

After the will was probated W. Lee Fisher obtained a

divorce *a mensa et thoro* from his wife on the ground of desertion. They have not lived together since the date of the divorce decree.

The lower court upheld the contention of the trustee in bankruptcy that the provision whereby the testator undertook to divest W. Lee Fisher of his interest in the property in the event of the separation of W. Lee Fisher and his wife, was void and unenforceable for uncerainty. It accordingly decreed that W. Lee Fisher was entitled to a life estate in said property, and that this interest was subject to the payment of his debts.

John Hamilton Fisher and Douglas Lee Fisher, the children of W. Lee Fisher, have appealed from this decree contending that the divorce decree has effected a separation of W. Lee Fisher and his wife, within the meaning of the will, and that W. Lee Fisher has thereby been divested of the life interest in the property.

If the decree of divorce was a separation of the parties according to the testator's meaning and intent, then, clearly, W. Lee Fisher has no further interest in the property. The language of the will is "* * * upon such separation all interest of W. Lee Fisher in said property shall cease * * *." There is nothing uncertain, vague or indefinite in this language.

It seems to us too plain for argument that the decree of divorce has worked a separation of the parties within the meaning of the will.

In Webster's New International Dictionary (2d Ed.) the word "separation" is given the following definition, among others: "*Law.* (a) Divorce. (b) A cessation of cohabitation between husband and wife by mutual agreement, * * *." According to the same authority to "divorce" means to "separate."

In Roget's Thesaurus of the English Language "divorce *a mensa et thoro*" is defined as "legal separation, judicial separation; separation."

In *Gloth* v. *Gloth*, 154 Va. 511, 536, 153 S. E. 879, 887, 71 A. L. R. 700, this court speaks of a divorce *a mensa et*

*thoro* as "a decree of legal separation." See also, *Gum* v. *Gum,* 122 Va. 32, 39, 94 S. E. 177; *Marshall* v. *Baynes,* 88 Va. 1040, 1044, 14 S. E. 978.

Code, section 5112, provides, in part: "In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property." Again, in providing for the merger of a decree for a divorce from bed and board into a decree of divorce from the bond of matrimony, Code, section 5115, speaks of a divorce decree as "a decree for a separation."

It is argued that the testator surely never intended to divest W. Lee Fisher of his life interest in the property by a separation brought about by the fault of his wife. But the testator does not specify that the separation, to be effective, must be due to the fault of either the husband, or the wife, or both.

Neither does he state that the separation must be beyond hope of reconciliation. For even if the parties had been separated by a formal written contract or by a decree of absolute divorce (both of which appellee admits would be within the meaning of the will), yet there could still be a reconciliation. The parties might, by mutual consent, disregard the separation agreement and reunite, or they might remarry subsequent to the divorce decree.

It is not necessary for us to decide what other kind of separation the testator may have had in mind. We need not inquire into what other facts would have given rise to the same condition. All we need decide, and what we do decide, is that the divorce *a mensa et thoro* obtained in this case worked a "separation" of W. Lee Fisher and his wife within the meaning of the will, and that thereby W. Lee Fisher was divested of his life interest in the property.

We think the testator had in mind the interests of the children of W. Lee Fisher. He probably thought that as long as the father and mother lived together the children would enjoy, in some measure at least, the benefits of the income from the property. He, therefore, provided that

if the home were kept together—if there were no separation—the father and head of the family, W. Lee Fisher, was to enjoy and administer the property. But the testator further said that if the home were broken up by a separation, then Ida Fisher, as trustee, should administer the property for the benefit of the children alone.

As we said through Judge Whittle in *Epperson* v. *Epperson,* 108 Va. 471, 475, 62 S. E. 344, 346: "We are not unmindful of the principle that courts regard with disfavor conditions and defeasances which are calculated to prevent or defeat the absolute vesting of titles. Nevertheless, when the condition or defeasance is clear and explicit, they do not hesitate to give effect to the intention of the parties.

"When the intent of such an instrument is clear, it will be given full weight and effect, notwithstanding the fact that such instruments are regarded unfavorably by the courts."

Since W. Lee Fisher no longer has any interest in the property, his creditors have none.

The fact that W. Lee Fisher has been divested of his interest in the property, of course, does not operate to defeat the vested remainder in favor of his children. Under the doctrine of acceleration they are entitled to the enjoyment of the property in the manner prescribed in the above clause of the will, subject, of course, to the annuity in favor of Belle C. Fisher during the remainder of her life. *Christian* v. *Wilson's Ex'rs,* 153 Va. 614, 631, 151 S. E. 300; 1 Minor on Real Property (2d Ed.), sec. 741, p. 967.

A codicil to the will provides: "As the house and lot on Highland avenue adjoining the Wisecarver property which was devised by the sixth clause of my will to my nephew, W. Lee Fisher has been sold I now give him instead of said house and lot three thousand ($3,000.00) dollars, the said amount to be held in trust by the Shenandoah Valley National Bank of Winchester, Virginia, as trustee and invested and the annual proceeds to be paid

over to my said nephew until the title to the 'Eddy property' which I have devised to him shall be clear, then the said amount or so much as may remain after clearing said title shall be his absolutely."

The lower court, in the decree appealed from, placed this interpretation upon the codicil: "That the legacy provided for in the codicil to the will of J. T. Fisher is not to be treated as the absolute property of W. Lee Fisher, but shall be used by the Shenandoah National Bank, trustee, as a fund to acquire the interests of the descendants of Mrs. Harriet E. Cunningham in said property designated as the Eddy property after the death of Mrs. Alice McKinster, if the same may be obtained. The interest on said fund is to be held as belonging to W. Lee Fisher and to be for the benefit of his creditors as may hereafter be determined, and the deeds of trust and mortgages thereon in favor of the Farmers' and Merchants' National Bank and Trust Company."

The appellee, trustee in bankruptcy, contends that the court's interpretation of the codicil is erroneous, and that the legacy of $3,000 is the absolute property of W. Lee Fisher and liable for his debts.

Appellants urge that we should not consider the codicil because appellee's brief does not, in so many words, assign as cross-error the ruling of the lower court thereon. But appellee's brief clearly attacks the trial court's construction of the codicil, and plainly states the ground upon which reliance is had for a reversal of this portion of the decree. No doubt is left as to the question presented for consideration. We held in *Norfolk & Western Railway Co.* v. *Bondurant's Adm'r,* 107 Va. 515, 526, 59 S. E. 1091, 15 L. R. A. (N. S.) 443, 122 Am. St. Rep. 867, and in *Belmont* v. *McAllister,* 116 Va. 285, 290, 81 S. E. 81, that this was a sufficient assignment of error. It is likewise sufficient as an assignment of cross-error.

Furthermore, this court has the power under Rule VIII to correct on its own motion errors appearing on the face of the record, unless such errors are waived.

"VIII. *Consideration of General Error.*

"In any appeal, writ of error, or supersedeas, if error is perceived against any appellee or defendant in error, the court will consider the whole record as before them, and will reverse the proceedings, either in whole or in part, in the same manner as they would do were the appellee or defendant in error to bring the same before them, either by appeal, writ of error, or supersedeas, unless such error be waived by the appellee or defendant in error, which waiver shall be considered a release of all error as to him."

Neither was the assignment of cross-error made too late as claimed by appellants. When the appeal was allowed on September 21, 1934, it brought before us, as of that date, for consideration under Rule VIII the whole record. Appellants cannot ask that we consider only such matters as are prejudicial to them and disregard such as are prejudicial to appellee. Burks' Pleading & Practice (3d Ed.), sec. 392, p. 739. The whole decree being before us for review appellee had, the right to assign cross-error in his brief filed within the proper time allowed by Rule II (b).

If this were not so appellants could, by delaying their appeal, either preclude the appellee from assigning cross-error or compel him to take a separate appeal. In *Wheeler* v. *Thomas,* 116 Va. 259, 267, 81 S. E. 51, we expressly disapproved the practice of taking separate appeals in matters of this character, pointing out that the right of the appellee to assign cross-error is sufficiently safeguarded by Rule VIII.

There is no merit in appellants' contention that we should not consider appellee's assignment of cross-error.

In the sixth paragraph *(supra)* of the will the testator devises to W. Lee Fisher three pieces of property, namely: (1) the "Eddy property," (2) the "Baker street property," and (3) the "Highland avenue property."

The codicil provides that since the "Highland avenue

property" has been sold, W. Lee Fisher is given, in lieu thereof, the sum of $3,000. His enjoyment of the corpus of the legacy is postponed, however, "until the title to the 'Eddie property' which I have devised to him shall be clear," after which the amount "shall be his absolutely."

The question is, What was the trouble with the title to the Eddy property, and how did the testator contemplate that it should be cleared?

J. T. Fisher, the testator, acquired the interests of Alice M. McKinster and H. E. McKinster in the Eddy property by a trustees' deed executed pursuant to a decree in the chancery suit of *Reardon* v. *McKinster*. In that suit the court determined that under the will of William N. Eddy, Alice M. McKinster had a life interest in the property; that H. E. McKinster was entitled to a fee simple in the remainder subject to be defeated by the death of the said H. E. McKinster, leaving "no children or descendants," before the death of Alice M. McKinster; that in the latter event an undivided one-half interest in the fee simple title would pass to Alice M. McKinster, and the other undivided one-half interest would pass to certain parties whom, for brevity, we shall designate as the Cunningham heirs.

Other marks than the obscurity of the codicil clearly indicate that the will was prepared by someone, perhaps the testator, not skilled in such matters. When the codicil was written the testator evidently assumed that the mother, Alice M. McKinster, would die first, in which event, having acquired the interest of H. E. McKinster in the property, the testator's title thereto would be complete or "clear" as he termed it, since there would no longer be any possibility of his losing by defeasance the interest which he had acquired from H. E. McKinster.

But the title was not cleared as the testator predicted. For after he had died and his will had been probated, H. E. McKinster died without "children or descendants," leaving his mother, Alice M. McKinster, surviving him. Therefore, under the Eddy will, an undivided one-half interest in the fee simple title passed to the Cunningham

heirs, leaving the other undivided one-half interest in J. T. Fisher's estate, which likewise owned Alice McKinster's life estate.

Confronted with this situation the lower court decreed that the $3,000 legacy was not to be treated as the absolute property of W. Lee Fisher, but should be used by the bank-trustee to acquire the interest of the Cunningham heirs in the property, "if the same may be obtained."

This was, we think, erroneous. We find nothing in the codicil to indicate any intention on the part of the testator that the $3,000 fund should be used for purchasing the interest of the Cunningham heirs. There is neither authority in the trustee to make such purchase, nor directions as to how it should be done. We are pointed to no method whereby the Cunninghams could be compelled to sell. Neither is there any evidence in the record that their interest could be acquired for $3,000. In fact, the very language of the decree itself indicates that there is doubt as to whether this could be accomplished, for the direction therein for the use of the fund to purchase the Cunninghams' interest is qualified by the phrase, "if the same may be obtained."

Furthermore, in the petition for appeal it is frankly admitted, "If this interest cannot be purchased with this amount of money, then, and only then, do we think W. Lee Fisher would be entitled to the whole of the $3,000."

But even assuming that the Cunninghams' interest could be purchased for $3,000, the effect of doing so would be to deprive W. Lee Fisher of both the income on and corpus of the fund for the benefit of his children who will ultimately enjoy the Eddy property. There is no suggestion in the codicil that the legacy is in any way for the benefit of W. Lee Fisher's children. On the contrary, the intention is that W. Lee Fisher shall enjoy the income until after a certain event—namely, the clearing of the title to the Eddy property, after which the principal is to be his "absolutely."

We think the testator intended that the bank should

hold this fund of $3,000 and pay W. Lee Fisher the income thereon until the death of Alice M. McKinster prior to that of H. E. McKinster, which the testator assumed would happen, and which he knew would clear his title to the Eddy property. After this event had occurred, W. Lee Fisher was to own the fund "absolutely."

But H. E. McKinster having died prior to his mother, the trust becomes impossible of performance and terminates. 26 Ruling Case Law, p. 1210, sec. 52; 100 Am. St. Rep. 102, 103, note; 65 Corpus Juris, p. 351, sec. 124. As is said in 26 Ruling Case Law, pp. 1184, 1185, sec. 20: "If a deed shows an intention to create a trust in a particular manner, in which, however, it cannot operate, no intention can be presumed that it should operate in some other manner, and it must hence be adjudged void." *Loring* v. *Hildreth,* 170 Mass. 328, 331, 49 N. E. 652, 653, 40 L. R. A. 127, 64 Am. St. Rep. 301, 304.

While we think we have correctly interpreted the meaning and intent of the testator, it might not be amiss to observe that if we adopt the only other course open to us and treat the trust clause as being unintelligible and incapable of solution, the trust would fail for uncertainty (26 Ruling Case Law, p. 1183, sec. 20), and the same result would be reached.

Our conclusion is that the trusteeship over the $3,000 fund has terminated, and the fund, or so much thereof as remains, should be treated by the lower court as the absolute property of W. Lee Fisher for the benefit of his creditors as may hereafter be determined.

The decree of the lower court is reversed, and the cause is remanded for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*