## Richmond.

## MARSHALL v. BAYNES.

### April 21st, 1892.

1. DIVORCE A MENSA ET TORO—*Agreement.*—Pending suit for divorce from bed and board, husband and wife agreed to live separate, each to acquire and hold property free from claims of the other, and that decree be entered confirming the agreement. Afterwards, decree was entered reciting the taking of depositions and arguments of counsel and confirming the agreement;

HELD:
> The decree was in substance for a divorce from bed and board within Code, § 2264, and was final and valid and operated upon after-acquired property and the legal rights and capacities of the parties, as a decree from the bond of matrimony except that neither party could marry again during the life of the other.

2. IDEM—*Admissions.*—The fact that decree confirmed the agreement did not make it a decree on the admissions of the parties.

3. IDEM—*After-acquired property—Case at bar.*—After decree of separation the woman acquired land and sold it to appellant. After death of both the man and the woman, her heirs brought ejectment for the land, and the circuit court rendered judgment for the plaintiffs;

HELD:
> Error.

Error to judgment of circuit court of city of Danville, rendered May 10th, 1891, in an action of ejectment, wherein the heirs of Mary Arnett, deceased, were plaintiffs and the plaintiff in error, Paul Marshall, was defendant. Opinion states the case.

*Peatross & Harris* and *Staples & Munford*, for plaintiff in error.

*H. E. Barksdale*, *John A. Tredway* and *Christian & Christian*, for defendants in error.

LACY, J., delivered the opinion of the court.

The case, so far as it is necessary to state it here, is as follows:

In 1840 one Mary Arnett, the then wife of Joseph Arnett, brought a suit for divorce from bed and board against her said husband on account of cruelty and abuse, driving her from home, and putting her in fear of bodily injury.

The said Joseph Arnett answered, denying cruelty, and charging infidelity upon his wife.

During the pendency of this suit the parties thereto—plaintiff and defendant—after taking their evidence, in the form of depositions, on the 15th day of May, 1840, entered into an agreement in writing to the following effect: after stating the pendency of the suit, and their willingness to adjust all matters *embraced in the suit;* " that Joseph Arnett agree to assign over to ———, for the benefit of the aforesaid Mary Arnett, good bonds to the amount of $650, payable on or before the last day of October, 1840, one-third part of the land in the bill mentioned, according to quantity and quality, beginning at ———, on the upper part of the area, to include the spring and ten acres of cleared land, on which there is to be built a log house, say, eighteen feet square, hewed down, inside and out, with a plank floor above and below; the one below to be laid square edge and nailed down, the other to be laid in the rough state, &c., &c.; furnish the said Mary Arnett with a bed and stead, &c. (which she now has in possession); one hundred pounds of bacon and two barrels of corn, one pine table, three good split-bottom chairs, utensils for cooking, &c.,

and pay the costs of suit.   All of which property and effects the said Mary is *to hold as her own, and exercise exclusive owner-ship over, free from the control* of the said Joseph Arnett, and loan out the money, rent out the land, or cultivate it, accord-ing to her will and pleasure; *make her own contracts, and be responsible for the same as fully as a single woman might legally do.* And the said Joseph Arnett is to be free from all obligations for the debts contracted by the said Mary Arnett, or for any other or further means for her support during life; and the aforesaid parties hereby agree to live apart, free from any or all expense to each other, *and to acquire and hold property* as fully as if they had never been married; and it is further agreed by the parties hereto that a final decree in the aforesaid suit should be entered by the judge in pursuance of the true intent and meaning of the foregoing contract and agreement. And the aforesaid parties do further agree that the land shall be laid off by the direction and according to the valuation of Timothy Stamps, Thomas Cardwell and Littleberry Harper." On the 2d of June following the court decreed as follows: After bringing the cause on upon the papers formerly read and the foregoing agreement between the parties, and stating that the court was satisfied that the stipulations of this agree-ment had been complied with, except in paying the costs of this suit, upon consideration whereof the court decreed that the aforesaid *agreement be confirmed,* and that the defendant do pay the costs, except an attorney's fee, which latter he had already paid.

This was the final decree in the cause, and the parties ever after perpetually lived apart.   The wife died in 1865, and the husband in 1883.

It so happened that four years after this decree of final sepa-ration in 1843, in the year 1847, the woman, Mary, purchased one-half interest in a tract of land of Motley and wife, contain-ing 169¾ acres, lying in the county of Pittsylvania, Virginia, and three years after sold the said tract of land, in the year 1850, to

one Paul Marshall, the plaintiff in error, and left the state and settled in Kentucky. After the death of Joseph Arnett in 1883, to-wit: in 1890, the defendants in error here, as the heirs-at-law of Mary Arnett, instituted this action of ejectment against the plaintiff in error, Paul Marshall, the vendee of Mary Arnett in 1850, to recover this land. The result of which was that the court, acting in lieu of a jury, which was waived, rendered judgment for the plaintiffs, whereupon the defendant brought the case here by a writ of error.

The foregoing statement is not controverted, the facts being admitted. The errors assigned are: First, that the court erred in holding that the parties, Joseph and Mary, his wife, were not legally separated by the decree of 1843, and that the deed of Mary to Paul Marshall was invalid. Secondly, that if there was no divorce *a mensa et thoro*, between the parties that still the agreement between them of 1840 should have been held binding, and estopped Joseph, after the death of his wife, from claiming after-acquired land of hers, and that whatever right the children of Mary Arnett had accrued to them at the death of Mary in 1865, and they were barred in 1890, when they brought their suit; and, thirdly, the form of the judgment was erroneous, and should be set aside, as it was a judgment for their term yet to come in the land, and not a judgment for the land, the premises described in the declaration.

As to the first assignment of error, our Code, section 2264, provides: "In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property. Such decree shall operate upon property thereafter acquired and upon the personal rights and legal capacities of the parties, *as a decree for a divorce from the bond of matrimony*, except that neither party shall marry again during the life of the other."

Mr. Minor, in his Institutes, Vol. 1, p. 272, states the effect on the legal capacities or incapacities of the parties wrought by a divorce, *a vinculo matrimonii*, annuls the marriage, leaves

both parties free to marry again, liberates the wife from the restriction of coverture, and enables her to bind herself personally by contracts, &c.

In Virginia the effect of a divorce, *a mensa et thoro*, when there is a decree for the perpetual separation of the parties, " Such decree of perpetual separation is expressly declared by statute to operate upon the personal rights and legal capacities of the parties *as a decree of divorce a vinculo matrimonii*, except that neither party can marry again during the life of the other. Va. Code, 1873, chap. 105, sec. 13; " 1 Min. 275. Section 13, chapter 105, is the same as section 2264 of the Code, *supra*.

Mr. Conway Robinson, in the second volume of his Old Practice, speaking of this statute, says : " A decree of perpetual separation from bed and board shall have the same effect upon the rights of property which either party may acquire after the decree and upon the personal rights which either party may enjoy after such decree as *a divorce a vinculo matrimonii* would have, *save only* that no such decree of separation from bed and board shall authorize either party to marry again during the life-time of the other."

The decree in question of 1843, confirming the parties' agreement and decreeing in accordance therewith, is, we think a decree in substance for divorce *a mensa et thoro*, by which the parties are perpetually separated, because operating during the life of the wife it is perpetual. It was not a decree upon admissions of either party, but was in suit when the usual proceedings were had, depositions taken, and it was argued by counsel, and that the decreee was in accordance with the resolution of the parties, made three years before pending the suit, does not make it a decree founded upon their admission, but upon the court's judgment. It was binding upon the parties to the suit, it was not appealed from, has never been set aside, and it is binding upon the parties claiming here under the parties to that suit. It excluded the rights of the husband to courtesy, and whatever rights Mary Arnett's children had to this after-

acquired property arose on the death of the mother, and the plaintiff in error is protected by the statute of limitations.   See *Dugger* v. *Dugger*, 84 Va. 130.

It is not necessary to go further into an examination of the questions raised on the second ground of exception.   What has been said is conclusive of the case.   As to the third assignment of error, see *Alvey* v. *Cahoon*, 86 Va. 173, and authorities cited.

For the foregoing reasons we are of opinion to reverse the judgment complained of here, and to render such judgment here as the circuit court ought to have rendered.

JUDGMENT REVERSED.