**Alexandria**

PHILIP J. DIETZ, JR.

v.

SALLIE B. DIETZ

No. 0109-92-4

Decided October 19, 1993

COUNSEL

James A. Watson, II (Richard J. Colten; Surovell, Jackson, Colten & Dugan, P.C., on briefs), for appellant.

Joseph A. Condo (Beth A. Bittel; Rees, Broome & Diaz, P.C., on brief), for appellee.

OPINION

**COLEMAN, J.**—This appeal is from a final decree of divorce providing for custody of the parties' children, child and spousal support, the distribution of the parties' jointly owned property, monetary awards and other relief. We hold that (1) a trial court has no authority to order a custodial parent to sign a declaration that he or she will not claim the children as dependents for income tax purposes, (2) property acquired by one spouse after the last separation with wages earned after the last separation is separate property, (3) deferred compensation in the form of stock options should be considered under the provisions of Code § 20-107.3(G) regarding "pension, profit-sharing or deferred compensation plan[s]," and (4) a trial court has authority to award jointly owned marital property to one party who refuses to accept an offer for the purchase of the property, so long as an appropriate monetary award is made compensating the other party. Thus, we affirm the divorce decree in part, but reverse and remand the distribution of the stock options.

## INCOME TAX EXEMPTION

The trial court ordered the husband to pay child support for the three minor children born of the marriage, but refused to order the wife to release her claim for an income tax exemption for each of the children. Although the trial judge observed that it makes "perfect

sense" for the husband to have the exemptions, he concluded that he lacked authority to order the wife to surrender them to the husband.

A non-custodial parent may claim a child as a dependent on an income tax return by attaching to it a written declaration signed by the custodial parent declaring that he or she will not claim the child as a dependent. 26 U.S.C. § 152(e). Courts in some jurisdictions have interpreted their divorce statutes broadly to grant authority to order a parent to execute such a declaration. *See Monterey County v. Cornejo*, 53 Cal. 3d 1271, 812 P.2d 586, 283 Cal. Rptr. 405 (1991); *Ritchey v. Ritchey*, 556 N.E.2d 1376 (Ind. Ct. App. 1990); *Wassif v. Wassif*, 77 Md. App. 750, 551 A.2d 935, *cert. denied*, 315 Md. 692, 556 A.2d 674 (1989); *Singer v. Dickinson*, 63 Ohio St. 3d 408, 588 N.E.2d 806 (1992); *Cross v. Cross,* 178 W. Va. 563, 363 S.E.2d 449 (1987).

■ However, the Virginia statutes governing child support do not authorize a court to order a custodial parent to sign a declaration stating that he or she will not claim the child as a dependent. *See* Code §§ 20-107.2, 20-108.1, 20-108.2; *see also Lapidus v. Lapidus,* 226 Va. 575, 579, 311 S.E.2d 786, 788 (1984) ("A decree is void . . . if the mode of procedure employed by the court was such as it might not lawfully adopt"); *Stroop v. Stroop,* 10 Va. App. 611, 616, 394 S.E.2d 861, 864 (1990) ("A divorce court[ ] . . . may [not] claim inherent power to employ a mode or procedure which is not clearly provided by law"). Instead, a trial court is permitted to consider the "[t]ax consequences to the parties regarding claims for dependent children and child care expenses" when determining whether to deviate from a presumptive amount of support provided for by statute. Code § 20-108.1(B)(15). Thus, the legislature has provided that, although a trial court may not order a custodial parent to surrender his or her income tax exemption, the amount of child support awarded may be based upon consideration of the tax consequences of a claim for a tax exemption for a dependent child.

■ Admittedly, a court "may make such further decree as it shall deem expedient concerning the custody, visitation and support" of a minor child. Code § 20-107.2. However, the divorce statutes do not convey broad equitable powers onto the trial court. *See Reid v. Reid,* 245 Va. 409, 413, 429 S.E.2d 208, 210 (1993); *Ring v. Ring,* 185 Va. 269, 277, 38 S.E.2d 471, 475 (1946). In view of the legislature's express direction concerning the manner in which a trial court is to treat the tax consequences of "claims for dependent children and child care expenses," a trial court is not free to fashion other remedies. *See*

*Ernsberger v. Ernsberger*, 224 Va. 1, 2, 294 S.E.2d 794, 795 (1982). Thus, the trial court did not err in refusing to order the wife to sign a declaration that she would not claim the children as dependents on her income tax returns.

## SEPARATE OR MARITAL PROPERTY

Soon after the parties separated, the husband opened a bank account into which he deposited his post-separation salary. While the divorce litigation was pending, he paid support and his share of the mortgage on the marital residence out of marital assets, rather than from his salary. The husband used more than $38,000 on a line of credit on the marital home, exercised stock options he had acquired during the marriage, and sold off or encumbered other marital assets to pay the family's expenses while the bank account containing his post-separation salary grew to as much as $90,000. Eventually, however, the husband exhausted most of the money in this bank account to pay marital expenses. However, before doing so, he purchased a new automobile and furniture using funds from the post-separation wages in the bank account. The trial court classified the automobile and furniture as separate property.

Although the trial judge described the husband's behavior as "outrageous" and expressed his intention to "take it into account as an 'other factor' necessary to consider in arriving at a fair and equitable monetary award," he did not find that the husband had wasted marital assets. Furthermore, the wife does not appeal the trial judge's finding that the husband did not waste these assets. She appeals only the trial court's classification of the car and furniture as the husband's separate property. We uphold the trial judge's ruling that the automobile and furniture purchased by the husband after the last separation, with post-separation wages, was separate property.

Marital and separate property are well defined. Property titled in the names of both a husband and a wife and all other property acquired by either of them "during the marriage which is not separate property" is marital property. Code § 20-107.3(A)(2). Property acquired by either spouse "during the marriage, and before the last sepa-

ration of the parties," is presumed to be marital property. *Id.*[1] Separate property is that acquired by either party (1) "before the marriage," (2) "during the marriage by bequest, devise, descent, survivorship or gift" from someone other than the other spouse and (3) "during the marriage in exchange for or from the proceeds of sale of separate property," if maintained as separate property. Code § 20-107.3(A)(1).[2]

▮ Whether the husband's automobile and furniture are marital property depends upon the meaning of the concept "during the marriage" and the significance of the presumption that property acquired "before the last separation . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." If "acquired . . . during the marriage" simply means acquired after the date a marriage is celebrated and before the date of divorce, then clearly the husband's purchases were marital property. However, as we have recognized, for purposes of equitable distribution, when a marital partnership begins and ends is a more dynamic and complex concept than the day on which marital vows are exchanged or a court finally dissolves a marriage that may have long before ended in fact. *See Price v. Price,* 4 Va. App. 224, 231, 355 S.E.2d 905, 909 (1987); *see also* Lawrence J. Golden, *Equitable Distribution of Property* §§ 5.12 - 5.14 (1983 & Cum. Supp. 1993). Furthermore, by adopting the presumption that property acquired prior to the last separation shall be presumed to be marital, the legislature recognized that a marriage will

---

[1] When the bill of complaint in this proceeding was filed on April 14, 1989, Code § 20-107.3(A)(2) read in pertinent part:

Marital property is (i) all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise, and (ii) all other property acquired by each party during the marriage which is not separate property as defined above. All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse *during the marriage,* and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

(Emphasis added).

[2] When the bill of complaint in this proceeding was filed on April 14, 1989, Code § 20-107.3(A)(1) read:

Separate property is (i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; and (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property. Income received from, and the increase in value of, separate property during the marriage is separate property.

be deemed to have ended for purposes of classifying property as marital on the date of the last separation, in the absence of proof to the contrary.

■ Code § 20-107.3, providing for equitable distribution, is based on the notion that marriage is an economic partnership in which the parties, through varying contributions, monetary and nonmonetary, to the acquisition, maintenance, and care of property and to the well-being of the family, may accumulate marital wealth. *Rexrode v. Rexrode,* 1 Va. App. 385, 394, 339 S.E.2d 544, 550 (1986). "Viewing the enactment of the statute as an adoption of the view that marriage is a partnership of two individuals who have joined forces to benefit the union, it is evident that when the partnership ceases to work for the common good the marriage is for all practical purposes over." *Price,* 4 Va. App. at 231, 355 S.E.2d at 909. Thus, "the presumption that property is marital ceases on the date of the *de facto* dissolution of the marital partnership." *Id.* at 229, 355 S.E.2d at 908.

■ When the defunct partnership is dissolved, the property acquired through partnership contributions must be identified and classified as marital property. Code § 20-107.3(A)(2)(i); *Mitchell v. Mitchell,* 4 Va. App. 113, 117, 355 S.E.2d 18, 20 (1987). The rights and equities of the parties in the marital assets are then determined and the Code § 20-107.3(E) factors are applied to determine how to apportion the partnership assets or whether to make a monetary award, and the amount thereof. Code §§ 20-107.3(B) and (D); *Gologanoff v. Gologanoff,* 6 Va. App. 340, 349, 369 S.E.2d 446, 450 (1988). Generally, property acquired by one partner after the last separation when "at least one of the parties intends that the separation be permanent" is not "acquired . . . during the marriage" or as part of the marital partnership and will not be marital property, unless it was obtained, at least in part, with marital funds. *See Price,* 4 Va. App. at 231-32, 355 S.E.2d at 909. Property acquired by one partner totally separate and apart from the marital partnership does not imbue the other partner or spouse with rights and equities in such property. Where partnership efforts have contributed nothing to the acquisition or maintenance or preservation of the property, no basis exists for its being classified as a marital asset. Similarly, while property acquired by either party prior to the last separation is presumed to be marital, the presumption is rebuttable, and it may be shown to be separate because it comes within the definition of separate property in Code § 20-107.3(A)(2)(ii) or because it was not "acquired *during* the marriage."

■ The foregoing definition of "during the marriage" to encompass the time that the marital partnership existed in fact is further borne out by the legislature having amended Code § 20-107.3 to include the presumption that only property acquired prior to the last separation shall be presumed to be marital property. By adopting this rebuttable presumption, the legislature recognized that the last separation, when one party intends that the separation be permanent, is the date on which a marital partnership usually will have ended.[3] The presumption is not simply an evidentiary tool that assigns the burden of proof or burden of going forward with the evidence to a particular party. Rather, the presumption is substantive, in that it delineates when the marriage or partnership will be presumed to have ended for purposes of classifying property as marital (partnership) or separate (individual). *See Endpoint for Accumulation of Marital Property,* 5 Equitable Distribution Journal 37 (April 1988) (characterizes Virginia statute as one adopting date of separation as "cutoff date" for accumulating marital property).

■ While Code § 20-107.3(A)(2) does not expressly state that property acquired after the last separation shall be presumed to be separate property, it necessarily follows that if the marriage partnership is presumed to have ended as of the date of the last permanent separation, in order for property acquired after that date to be classified as marital, the party so claiming will have the burden of proving, without the benefit of a presumption, that it was acquired while some

---

[3] The initial version of Code § 20-107.3(A)(2) provided "[a]ll property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Effective July 1, 1984, subsection (A)(2) was amended to provide that "[a]ll property acquired by either spouse during the marriage, before the filing of a bill of complaint stating a ground of divorce, is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Effective July 1, 1986, subsection (A)(2) was again amended to provide that "[a]ll property . . . acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property." "Each of these amendments refers to the time of the classification of assets as marital or separate. . . ." *Mitchell v. Mitchell,* 4 Va. App. 113, 117, 355 S.E.2d 18, 20 (1987). These statutory amendments have established various dates on which the marital partnership will be presumed to have ended; the first amendment in 1984 adopted the date on which the bill of complaint was filed and the 1986 amendment adopted the date of the last separation. Those changes in dates represent a policy determination as to when the marriage shall be presumed to have ended. *See* Lawrence J. Golden, *Equitable Distribution of Property* §§ 5.12 - 5.14 (1983 & Cum. Supp. 1993) ("It stands to reason . . . that when the parties cease to contribute to the joint enterprise, when the partnership no longer exists, the rationale for equitable distribution is no longer cogent").

vestige of the marital partnership continued or was acquired with marital assets. Thus, if the party with the burden of proving that the property is marital fails in his or her burden, then necessarily, the property acquired after the marital partnership ended is separate property.

If, as the dissent contends, "during the marriage" is a more narrow concept and if marital property is all property acquired after the date of marriage and before the date of divorce, other than that which comes within the definition of separate property in Code § 20-107.3(A)(2)(ii), the presumption that property acquired before the last separation is marital property has little or no significance. It would be senseless for the spouse with the burden of proving property to be marital to undertake the task of establishing when the last separation occurred, if the spouse could accomplish the same result simply by showing that the other spouse, regardless of the date of acquisition, had not acquired the property by bequest, devise, survivorship, gift or inheritance, or in exchange for separate property. As I perceive Judge Barrow's view of the function of the presumption, the only situation where it would operate to have any effect upon classifying property acquired after the last separation is when the proponent that property is marital totally fails to prove how the other spouse acquired the property. The only instance where this would occur is when a party neglects to inquire or to compel the other party to disclose how he or she obtained the property. The legislature could not have intended the presumption to serve such a limited and insignificant function. We will not attribute to the legislature's amendments to Code § 20-107.3(A)(2) a construction that has little or no significance. *Jones v. Conwell*, 227 Va. 176, 180-81, 314 S.E.2d 61, 64 (1984).

Thus, the trial judge did not err in finding that the automobile and furniture purchased with post-separation wages after "the *de facto* dissolution of the marital partnership," *Price*, 4 Va. App. at 229, 355

S.E.2d at 907, but before the divorce decree, were not marital property.[4]

## STOCK OPTIONS

As a part of his employment compensation, the husband acquired options to purchase stock in his corporate employer. Each of these options, granted at various times before the parties separated, had to be exercised within ten years of the date the option was granted but could not be exercised until the husband had remained in the corporation's employ for a requisite period of time. Consequently, some of the options were exercisable before the parties separated, others were not exercisable before the parties separated but were exercisable before the hearing on the monetary award, and still others were not exercisable at the date of the hearing.

The final order required the husband to pay to the wife fifty-three percent "of the marital portion . . . of the net proceeds" from the sale of any shares of stock acquired, if and when the husband exercised any of the stock options that were marital property. The marital portion of the net proceeds of the sale of the stock was defined as "a fraction, the numerator of which shall be the number of months the [husband] was covered by the identified plan prior to [the date of final separation], and the denominator of which shall be the total number of months the [husband] is covered by the plan." Thus, the trial court treated the stock options in a manner similar to "a pension that has not yet vested."

Previously, this Court has described a pension or retirement benefit as "funds paid or to be paid upon cessation of employment to the employee by his or her employer as a result of the employment as a means of deferred compensation." *Robinette v. Robinette,* 10 Va.

---

[4] As to the trial judge's concern that the husband's conduct was "outrageous" in that he accumulated his post-separation wages as separate property while depleting marital assets to pay his support and personal expenses, the problem is not one of waste since those assets were available for classification as marital property on the date of separation. Code § 20-107.3(A)(2)(i); *see* Golden, *supra* note 3, § 8.15. This problem is one of valuation, that is, whether the depleted value of the asset as of the date of the evidentiary hearing will be used or whether upon twenty-one days notice as provided in Code § 20-107.3(A), the trial court should adopt a more appropriate valuation date in order to redress the husband's efforts to manipulate the value of the marital estate. In this instance, the husband depleted marital assets and all the separate assets that he accumulated in payment of the parties' expenses and his support obligations. Therefore, to the extent that the trial judge may have considered the husband's depletion of marital assets in his equitable distribution award, it did not become an issue on appeal.

App. 480, 485, 393 S.E.2d 629, 632 (1990). Under this definition, a stock option agreement such as this one that extended a benefit not to be paid "upon cessation of employment," but, instead, conditioned upon the husband's continued employment would not be a pension or retirement benefit.

However, the statute applicable in *Robinette* was amended before the bill of complaint was filed in this case. 1988 Va. Acts c. 880. The statute now expressly includes a "deferred compensation plan." Code § 20-107.3(G).[5] By adding deferred compensation plans to those assets identified in Code § 20-107.3(G), the legislature expressed its intention to treat uniformly all plans of compensation, whether payable upon retirement or not, if payment is deferred to the future but earned during the marriage. Consequently, a "deferred compensation plan" may now be treated as a pension or retirement benefit. Code § 20-107.3(G).

The husband's stock options were a part of a deferred compensation plan. The stock option agreements permitting the purchase of stock in the employer were offered to "key employees." The options could be exercised only by the employee in the amounts and at the times prescribed by the agreements. The options lapsed at specified intervals following the termination of the husband's employment. Thus, the husband's stock options were part of a plan of deferred compensation that should have been considered under the provisions of Code § 20-107.3(G).

The trial court treated the stock options as if they were a pension under Code § 20-107.3(G), but awarded the wife "fifty-three percent of the marital portion of the net proceeds" from any exercise of a stock option. Code § 20-107.3(G) allows a court to "direct payment of

---

[5] When the bill of complaint in this proceeding was filed on April 14, 1989, Code § 20-107.3(G) read:

In addition to the monetary award made pursuant to subsection D, and upon consideration of the factors set forth in subsection E, the court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time. However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made. "Marital share" means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.

a percentage of the marital share of any pension, profit-sharing or deferred compensation plan," but also provides that "[n]o such payment shall exceed *fifty* percent of the marital share of the cash benefits actually received by the party against whom such an award is made." (emphasis added). Accordingly, we must reverse the trial court's award on this issue and remand for reconsideration in light of the mandate of Code § 20-107.3(G).

## RENTAL VALUE OF MARITAL RESIDENCE

The husband sought a credit of one-half of the fair market rental value of the marital residence from the date of divorce to the date of the court-ordered sale of the home. His claim was based on an assertion that the wife would occupy the marital residence until it was sold; therefore, as a tenant in common, he was entitled to one-half of the fair market rental value of the home. *See Gaynor v. Hird,* 15 Va. App. 379, 381, 424 S.E.2d 240, 242 (1992). He did so, however, at the time of the divorce; therefore, the relief he requested was prospective in nature. He could not establish if the wife would live in the home after the divorce and, if so, for how long. His apprehension of his entitlement to relief was premature and, therefore, speculative. Damages which cannot be established with reasonable certainty are speculative or conjectural and may not be recovered. *Cassady v. Martin,* 220 Va. 1093, 1100, 266 S.E.2d 104, 108 (1980); *Phillips v. Stewart,* 207 Va. 214, 221, 148 S.E.2d 784, 789 (1966). *See Virginia Elec. & Power Co. v. Farrar,* 205 Va. 244, 249, 135 S.E.2d 807, 811 (1964). Thus, the trial court did not err in denying his request.

## CONDOMINIUM

For investment purposes, the parties owned a condominium at Bethany Beach, Delaware. At the time of trial, although the husband had collected $10,473 in rent from the property from March to December 1991, condominium fees were in arrears in the amount of $1,000 to $1,500 and mortgage payments were in arrears $9,000. Following the separation, the husband did all of the work associated with the property and personally covered losses on the property totaling $17,000. At the time of trial, the fair market value of the property was $170,000, and it was listed for sale at $180,000.

An offer of $150,000 for the property was received in December, 1991, and the wife wanted to accept this offer, but the husband refused, even though foreclosure proceedings had begun.

The trial court awarded the property to the husband as his sole property, requiring that he pay a monetary award to the wife equal to the amount she would have received, after paying taxes, mortgage balances, commissions and closing costs, if the property had been sold for $150,000. The wife contends that the court should have required the husband to accept the contract for sale.

Because the property was jointly owned, the trial court had authority, based upon the factors enumerated in subsection E of Code § 20-107.3, to divide or transfer the property. Code § 20-107.3(E); *see also Stroop v. Stroop*, 10 Va. App. 611, 616, 394 S.E.2d 861, 863-64 (1990). This division or transfer of jointly owned marital property and the amount of any monetary award, subject to the enumerated statutory factors, is within the sound discretion of the trial court. *Amburn v. Amburn,* 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992). Therefore, the trial court was authorized to transfer the property to the husband on the terms it prescribed.

Furthermore, in doing so the trial court determined the monetary award the husband was required to pay the wife as a consequence of this transfer based on fifty-three percent of the net proceeds she would have received had the property been sold for $150,000. This share was based on the court's consideration of the required statutory factors under Code § 20-107.3(E). The court made findings pertaining to each such factor, and we are unable to hold that the trial court abused its discretion in arriving at this award.

## RENTS FROM CONDOMINIUM

The trial court declined the wife's request for a credit for rents collected by the husband from rental of the condominium at Bethany Beach. From February 22, 1990 until March 15, 1991, the husband was required by a pendente lite order to receive the rental income from the property and to pay all of its costs. The husband contends that his expenses associated with the property even after March 15, 1991, exceeded the rents he received.

The rents were collected before the parties were divorced; therefore, the holding in *Gaynor v. Hird* may not be controlling. *See Gaynor v. Hird,* 15 Va. App. at 381, 424 S.E.2d at 242; *see also DiTommasi v. DiTommasi,* 27 Md. App. 241, 259, 340 A.2d 341, 351 (1975) (allowing contribution between tenants by the entireties); *Sirianni v. Sirianni,* 14 A.D.2d 432, 437, 221 N.Y.S.2d 693, 698 (1961) (allowing contribution); *Branstetter v. Branstetter,* 36 N.C.

App. 532, 536, 245 S.E.2d 87, 90 (1978) (not allowing contribution). However, we do not address this issue.

The wife did not seek this credit initially, and the trial court did not address this question in its original equitable distribution opinion in which it directed the property to be sold and the proceeds be divided. The issue was not addressed until a later opinion dealing exclusively with the award of the condominium to the husband because of his unwillingness to accept the outstanding offer for the property that the wife was willing to accept. In denying a credit for the rentals, the trial court said that such a credit had not been sought earlier and "would not have been required by the terms of my original equitable distribution opinion" and, further, that the wife could "presumably pursue remedies for any conversion of the rental income that may have occurred subsequent to the ED hearing."

Generally, a court's decision to permit or deny an opportunity to assert an additional issue for consideration after arguments have been heard and a decision rendered is one of discretion, *Brown v. Brown,* 244 Va. 319, 324, 422 S.E.2d 375, 378 (1992), particularly where "the discovery of new and important [evidence] not known or accessible" is not alleged. *Holmes v. Holmes,* 7 Va. App. 472, 482, 375 S.E.2d 387, 393 (1988) (quoting *Woods v. Early,* 95 Va. 307, 311, 28 S.E. 374, 375 (1897)). In this case, the wife did not raise her contention during the court's consideration of the equitable distribution issues during which the court determined the wife's share of the proceeds from the sale of the property. Following the court's decision on these issues, the husband moved for reconsideration of certain proposed rulings expressed in the court's letter opinion; the wife made no motion. Almost six months after the trial court's opinion ruling on the issues related to equitable distribution, she asserted this concern during a dispute caused by the husband's refusal to accept an offer for the purchase of the condominium. The trial court did not abuse its discretion in refusing to address the issue at that time.

## CONCLUSION

For the reasons stated, those provisions of the divorce decree, affected by the award of more than fifty percent of the marital share of the net proceeds from the sale of stock acquired through the husband's stock options, are reversed and remanded for the purpose of limiting the award based on the husband's stock options. Thus, all provisions providing for the distribution of any marital property and any mone-

tary awards made pursuant to Code § 20-107.3 are reversed and remanded. In addition, because award of spousal support must be made after considering the "provisions made with regard to the marital property under § 20-107.3," the award of spousal support is reversed and remanded for reconsideration. Code § 20-107.1. Finally, the child support award is also subject to the consideration of the provisions made with regard to the marital property, and it too is reversed and remanded. Code § 20-107.2. The remaining portions of the final decree are affirmed.

*Affirmed in part, reversed in part, and remanded.*[6]

Benton, J., concurred.

Barrow, J., dissenting in part.

The evidence was undisputed that the husband purchased the automobile and the furniture, before the parties were divorced, with funds acquired from his salary. His salary was not property acquired by inheritance or gift or from the exchange or sale of separate property. All property acquired during a marriage is marital property unless acquired by inheritance, gift, or from the sale or exchange of separate property. Code §§ 20-107.3(A)(1) and 20-107.3(A)(2). Thus, the evidence established, without the aid of any presumption, that these assets were marital, not separate, property.

The majority disagrees. It concludes that, for purposes of equitable distribution, the parties' marriage ended, not upon their divorce, but upon their last separation. The controlling statute, however, does not say, nor did the General Assembly intend for it to say, that for purposes of equitable distribution a marriage ends at the time of permanent separation.

Nothing in the statute or elsewhere indicates that "during the marriage" means anything other than the period of time during which the parties are legally married, a period ending upon divorce. Some state legislatures, wanting to describe a different date upon which to terminate consideration of marital property, have expressly done so. *See, e.g.*, N.Y. Dom. Rel. Law § 236(B)(1)(c) (McKinney 1986) (marital

---

[6] Other issues raised by the parties in this appeal have no precedential value, or other significance for the law or legal system, and, therefore, are considered and disposed of in an unpublished memorandum opinion filed with the clerk of this court.

property is that acquired "during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action"); N.C. Gen. Stat. § 50-20(b)(1) (1992) (marital property is that acquired "before the date of separation of the parties"); W. Va. Code § 48-2-1-(F)(5)(9) (1992) (separate property is that acquired after the separation of the parties "next preceding the filing of an action" and which "continues . . . without interruption"); 23 Pa. Cons. Stat. Ann. § 3501(a)(4) (1991) (separate property is that acquired "after final separation until the date of divorce"); Ind. Code Ann. § 31-1-11.5-11(a) (Burns 1957) (allows division of property acquired before the "date of filing of the petition for dissolution of the marriage); *see also* 5 Equitable Distribution Journal 37 *Endpoint for Accumulation of Marital Property* (1988).

The statutory presumption, relied on by the majority, does not provide an endpoint for determining marital property. It requires that one presume that property "acquired by either spouse *during the marriage,* and before the last separation of the parties . . . is . . . marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2). This presumption avoids the necessity of proving how property is acquired, if acquired before the last separation. *Price v. Price,* 4 Va. App. 224, 229, 355 S.E.2d 905, 908 (1987). If acquired before the last separation of the parties, it is presumed to be marital property and the party challenging that classification must prove its acquisition by inheritance, gift, or from the exchange or sale of marital property. *See id.* On the other hand, if acquired *after* the last separation of the parties, the property is not presumed to be marital and, therefore, must be classified as separate "absent a showing by [the proponent] that marital assets were used to purchase" it. *Id.*

The majority interprets the absence of a presumption after the separation of the parties as changing the definition of marital and separate property. The majority now classifies such property based upon the quality of the marriage at the time of acquisition, *i.e.,* at a time when "some vestige of the marital partnership continued." This language is not the language of the statute; it is the language of the majority. The statute defines marital and separate property, whether acquired before or after the date of last separation, solely on the basis of how the property is acquired. The majority, recognizing that the beginning and end of a marriage "is a more complex and dynamic concept than the day on which marital vows are exchanged or a court finally dissolves a marriage," rewrites the General Assembly's definition. The General

Assembly provided only that after the date of last separation, property acquired *during the marriage* would be marital property; it did not provide that such property would be *presumed* to be separate property.

In no other context are marital property rights defined in these psychodynamic terms. The law in Virginia has long recognized that rights of a spouse in the property of a deceased spouse are not terminated until divorce. *See Gum v. Gum*, 122 Va. 32, 39, 94 S.E. 177, 179 (1917); *Marshall v. Baynes,* 88 Va. 1040, 1044, 14 S.E. 978, 979 (1892). It is anomalous that, although a spouse may retain rights of inheritance in the other spouse's property, even if acquired after they have separated, such property is not marital property. This inconsistency suggests that the General Assembly, which has expressly terminated statutory rights of inheritance only in a deserting spouse, Code § 64.1-16.3, did not intend to limit marital property to that acquired before the last separation of the parties, regardless of fault. It did not chose to do so, perhaps, for good reason.

The majority's definition of marital property adds a new battlefield for warring spouses. A divorce is a readily determinable and unequivocal event; the last separation of the parties, when one of them intends that the separation be permanent, is not. In the past, identifying the actual moment when a married couple separated and one formed the intent that the separation would be permanent was of little economic significance. Few were moved to draw a line in the sand over this issue; now, because of the economic consequences flowing from the majority's holding, many will.

The General Assembly did not intend to create an ambiguity, encouraging litigation, when it defined marital and separate property. On the contrary, in domestic relations disputes the General Assembly has sought less discord, and in this instance has carefully avoided the more ambiguous definitions used by some other states.

Furthermore, the legislature's definition, unencumbered by the majority's gloss, better allows a trial court to arrive at an equitable division of property acquired during the marriage. If property acquired during the marriage by means other than gift or inheritance is treated as marital, rather than separate property, a trial court may adjust each party's equitable interest by considering the contributions each has made to the acquisition and maintenance of the property acquired after the date of last separation, as well as other proper considerations. By limiting marital property to that acquired before the parties' last

separation, the majority excludes this property from such adjustment regardless of the contributions of each party to the acquisition or maintenance of the property, or any other proper consideration. On occasion, when both parties are involved in the operation of a business, when they continue to own property jointly, or when one is residing in the house of another, one spouse may contribute to the well being of the other's property. Although it may be unrealistic to assume that after the parties have separated the marital partnership continues to function as before, it is equally unrealistic to assume that the parties' affairs are no longer intertwined once they are separated.

For these reasons, I would hold that the undisputed evidence that the husband in this case acquired a new automobile and furniture after the parties separated, but before they were divorced, by means other than gift, inheritance, or in exchange for or from the proceeds of sale of separate property, proved that this property was marital property, and that the trial court erred in classifying it as separate property. I would, therefore, reverse the monetary award and remand the proceeding for reconsideration in light of such a holding.