COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


ELECTRA MOORE McGAY

MEMORANDUM OPINION[*] BY
v.   Record No. 2756-99-3      JUDGE RUDOLPH BUMGARDNER, III
AUGUST 29, 2000

CULBERT McGAY


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

Kenneth L. Crosson for appellant.

Randall T. Perdue (P. Donald Moses;
Timberlake, Smith, Thomas & Moses, P.C., on
brief), for appellee.


Electra Moore McGay appeals from an equitable distribution award and raises eight questions. She contends the trial court erred (1) in ruling the parties lived separate and apart since 1985; (2) in determining the date of separation without reference to whether either party intended to live separate and apart; (3) in finding that money spent after 1985 on joint obligations was the sole income of the husband; (4) in crediting the husband with separate income when the income came from the sale of marital assets; (5) in awarding the husband a share of marital property based upon the conclusion that the husband used his separate income to pay for marital obligations; (6) in

     * Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

awarding the husband 60% of the marital property based upon the conclusion that the husband used his separate income to pay for marital obligations; (7) in awarding the wife only 35% of the husband's military and civil service pensions based upon the conclusion that she did not demonstrate financial need; and (8) in awarding the husband both habitable real properties and awarding the wife an uninhabitable property. The majority of the separately stated questions, Questions (1)-(6), arise from a single contention: the trial court erred by basing its equitable distribution rulings on the finding that the marital partnership ended in 1985. We conclude the trial court properly used 1985 as the date of separation in its deliberations and did not err on the remaining assignments of error. Accordingly, we affirm.

The divorce proceedings began May 28, 1996 when the wife filed for divorce on the grounds of desertion. The trial court granted the divorce February 19, 1997 on the grounds the parties had lived separate and apart since April 1985. The trial court did not decree equitable distribution in the final decree of divorce but reserved jurisdiction over that issue for future decision. Several months later, the trial court referred all equitable distribution issues to a commissioner in chancery.

The commissioner heard extensive evidence the next summer and made his report November 9, 1998. The report concluded with the recommendation that 60% of the marital property and 65% of

-

the husband's pensions be allocated to him.  It proposed two alternative methods for allocating the illiquid estate.  The wife filed timely exceptions to the commissioner's report.  After hearing the exceptions, the trial court approved the commissioner's report, allocated the real estate according to the second of two alternative plans for distribution, and entered the final order of distribution November 1, 1999.

The wife took depositions on the issue of fault December 16, 1996, and they became the sole evidence upon which the divorce was decreed.  Both parties and two of their adult children testified about the marital history and its breakup.  The evidence established that the parties married November 16, 1943 and had three children.  The husband worked for, and eventually retired from, the civil service while the wife worked intermittently.  Throughout the marriage the parties lived apart for substantial periods of time.  The wife began to reside in Augusta County, Virginia in 1978, though the husband lived and worked in Georgia.  The husband retired to Augusta County in April 1985, but the two never lived together.  They resided on separate farms about seven miles apart in a rural, remote part of the county.  No divorce action was initiated until May 1996 when the wife brought the divorce action.  When the divorce was decreed, the parties had been married for 54 years.  The wife was 81 years old and in very poor health.  The husband was 83

-

years old, in reasonably good health, but actively farming their properties and managing their finances.

From the evidence presented by deposition, the trial court found that the parties last cohabited in Georgia, and lived separate and apart from April 1985 without cohabitation or interruption.  The trial court recited the finding in the decree, granted the divorce on that basis, and entered the decree February 19, 1997.  The decree of divorce was a consent order, requested by both parties, to which neither party took exception.

The divorce decree and its finding became a final adjudication of the issue between the parties just as it would have become final if equitable distribution had never been raised and not reserved for future consideration in the decree. See Toomey v. Toomey, 251 Va. 168, 172, 465 S.E.2d 838, 840 (1996) (Code § 20-107.3(A) permits the trial court either to adjudicate equitable distribution when it decrees a divorce or to retain jurisdiction to adjudicate equitable distribution later, but if it does not retain jurisdiction, the trial court has no jurisdiction once the decree of divorce becomes final). The issue became final 21 days after entry of the order. "Additionally, an order of the circuit court becomes final 21 days after its entry unless modified, vacated, or suspended by the court during that time."  The Berean Law Group v. Cox, 259 Va. 622, 626, 528 S.E.2d 108, 111 (2000) (citing Rule 1:1).

-

The trial court fixed April 1985 as the date of the last separation in this marriage.  The record shows the trial court based the finding on the depositions taken by the wife and filed by her in support of her proposed decree.  As stated in Dietz v. Dietz, 17 Va. App. 203, 209-10, 436 S.E.2d 463, 467 (1993), "the legislature recognized that a marriage will be deemed to have ended for purposes of classifying property on the date of the last separation, in the absence of proof to the contrary."  The finding became a final adjudication of that issue of fact and bound the parties during the subsequent equitable distribution proceedings.

The record is clear that the parties accepted April 1985 as the date of separation throughout the commissioner's hearing. The wife made no objection to the use of that date in her exceptions to the commissioner's report.  Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal.  See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc).  Accordingly, Rule 5A:18 bars our consideration of this issue on appeal, and that bars consideration of Questions (1)-(6).  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

The trial court referred the issues of equitable distribution to a commissioner in chancery, who heard the

-

evidence June 10, 1998 and filed his report November 9, 1998. The wife filed exceptions to the commissioner's report on November 19, 1998 and noted four objections: (1) the wife was denied due process of law because she was incapable of assisting in the presentation of her evidence; (2) the commissioner calculated the wife's share of the husband's pensions based on need; (3) the commissioner erred in using an evaluation date other than the date of the evidentiary hearing in the absence of a motion filed as required by Code § 20-107.3(A); and (4) the commissioner sua sponte selected an alternate evaluation date. The wife filed no further exceptions, made no request, nor received leave to file additional exceptions at a later time.[1] See Code § 8.01-615. No exception raised the issues now posed on appeal in Questions (3)-(6), and for that additional reason, Rule 5A:18 bars consideration of those questions.

---

[1] The wife concedes that she did not raise additional objections and did not request or obtain an extension for filing them. She maintains that she presented the additional issues to the trial court in her "Reply Memorandum in Support of Plaintiff's Exceptions to the Report of Commissioner." She filed the memorandum February 12, 1999 along with new exhibits not presented at the commissioner's evidentiary hearing. She maintains the trial court ruled on the additional objections when it stated at the beginning of the hearing on exceptions: "And I reviewed everything the Commissioner said. I will review everything that you-all bring out, and then I'll go through this record, every bit of it, to see whether it's supported or whether it isn't."
A review of the arguments presented orally and in the memoranda and briefs makes clear that the husband objected to the wife's expanding and recasting her objections beyond those stated in her pleadings.

The record reflects no merit or basis for objections to the commissioner's report (1),[2] (3), and (4).[3] The remaining exception to the report contends the commissioner erroneously calculated the wife's share of the husband's pensions based on need. In reviewing whether the trial court considered need improperly, we must examine the factors in Code § 20-107.3(E) that the commissioner considered when distributing the marital property. In his report the recommendation for allocating the pensions proceeded from and built upon that analysis because the same factors must be considered in both decisions. See Code § 20-107.3(G).

The commissioner's report was a careful, ordered, and complete recitation of the steps taken in weighing the evidence and in deciding upon a fair and equitable distribution of the marital estate accumulated during the long marriage. The

---

[2] The wife's counsel asserted that the trial court erred by not appointing a guardian ad litem and suggested that she was not competent. Immediately on that representation, the trial court inquired fully whether counsel felt his client was not competent. Counsel assured the trial court she was competent. When questioned during oral argument, counsel advised this Court the wife was competent. Accordingly, there is no basis to appoint a fiduciary to conduct her suit for her.

[3] In objections (3) and (4), the wife asserted the commissioner chose an alternative valuation date sua sponte without requiring a motion as provided by Code § 20-107.3(A). The record contains an appropriate motion that the husband filed 21 days before the commissioner's hearing. The commissioner did not act sua sponte. Additionally, the record reflects the commissioner applied an alternative valuation date to only one parcel of real estate. He gave precise reasons for that decision, and the evidence supports it.

-

commissioner determined the legal title, ownership, and value of the real and personal property. It identified the marital and separate property. It presented a clear, concise, and cogent review and analysis of the evidence that embraced each factor in Code § 20-107.3(E). In orderly sequence, the report gave a complete presentation of the salient details of the marriage and fully evaluated all factors specified in Code § 20-107.3(E). It then summarized its more detailed discussion of the factors:

> Throughout the parties' 41-year marriage, Mr. McGay was virtually the sole monetary contributor to the well-being of the family and the acquisition of the marital property. He was the principal nonmonetary contributor in the care and maintenance of such property. Based upon the testimony of the parties and their witnesses at the divorce depositions and the Commissioner's hearing, the circumstances and factors which contributed to the dissolution of the marriage tend to favor Mr. McGay although the Court did not find that either party was at fault and, as previously noted, Mrs. McGay was unable to be an effective witness on her own behalf. With the exception of Mrs. McGay's extremely poor physical and mental condition, none of the other factors set forth in Virginia Code § 20-107.3 E weigh to either party's advantage. After considering all of these factors, a larger share of the marital property should be awarded to Mr. McGay because he is almost solely responsible for the accumulation of the marital wealth. A substantial provision must be made for Mrs. McGay, however, in view of the length of the parties' marriage and her state of health and dependent condition. Accordingly, your Commissioner recommends that 40% of the marital property, excluding Mr. McGay's military and civil service pensions, be awarded to Electra

-

> Moore McGay and the remaining 60% to Culbert McGay.

The summary itself recites evidence covering factors (1) through (5), which were the factors the commissioner deemed more important in this case. Our review of the record reveals evidence presented on each statutory factor. The evidence supports the findings made by the commissioner, and the report reflects the commissioner carefully weighing and balancing the various factors before arriving at his conclusion of law.

All decisions made in distributing the marital property were an exercise of sound discretion. There is no presumption favoring an equal division of marital property. See Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 831 (1986). We recognize that "the trial court's job [in reviewing an equitable distribution award] is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). The trial court's decision will not be reversed on appeal unless plainly wrong or unsupported by the evidence. See Rahbaran v. Rahbaran, 26 Va. App. 195, 205, 494 S.E.2d 135, 139 (1997). The record suggests no abuse of discretion by the trial court.

After dividing the marital property, the commissioner's report next addressed distribution of the husband's pensions.

-

The wife contends they saved the husband's pensions for their joint benefit and an unequal distribution unfairly benefits him. She argues the commissioner impermissibly based the award on need. The report stated:

> Mr. McGay's military and civil service pensions have been the parties' principal sources of support during their retirement and separation. The entire amounts of both pensions are consumed in paying the parties' debts and living expenses. Mr. McGay has been the sole monetary and nonmonetary contributor to the accumulation, acquisition, and maintenance of his pensions and he should be awarded a larger share of the pensions than his share in the rest of the marital property. In addition, Mrs. McGay has not demonstrated the need for more than 35% of the monthly total of these pensions for her continued maintenance and support.

The report shows that the commissioner considered the proper factors in deciding to make an award of the pension. Having discussed the factors in Code § 20-107.3(E) for purposes of distributing marital property, the report moved to considering how those factors weighed differently when distributing the pensions. The commissioner gave additional weight to the factor that the husband was "the sole monetary and nonmonetary contributor to the accumulation, acquisition, and maintenance of his pensions."

The commissioner did not require the wife to prove her need. The comment about lack of need was an aside to make clear that the recommendation would provide for her adequately. It

-

related to the earlier comment that the wife required "substantial provisions" because of the length of marriage and her failing health, and it related to the finding that the pension income had been consumed to pay debts and living expenses during the separation. The commissioner was assuring the trial court that the proposed division of the pensions would continue to provide the wife a means of support as it had during the separation. It was not limiting her pension award on the basis of need. When a trial court "divides the pension unequally, its reasons for doing so must be done on the record." Artis v. Artis, 10 Va. App. 356, 362, 392 S.E.2d 504, 508 (1990). Based on the record, we find no error in the division of the husband's pension.

Finally, we consider whether the trial court erred in distributing the jointly owned real property. The wife objected to the trial court's selection of the commissioner's second option for allocating the parties' marital real estate and his rejection of her alternative proposal which was not reported by the commissioner. She contends that real estate allocated to her is uninhabitable and that it was unconscionable to evict her from her residence due to her age and failing health.

The parties' primary asset was real estate consisting of three separate farms. While the only indebtedness encumbered the farm titled in the husband's name, the marital estate was

-

illiquid.  The three properties were called Hadlow, Riverjack, and Epidarus.

Hadlow consisted of two separate parcels divided by Route 600, a state secondary road.  The husband bought both parcels in 1964.  Hadlow I contained 121 acres and the farmhouse in which the wife resided.  Despite the husband's periodic repairs, the farmhouse remained in poor condition.  The balance contained cropland and pasture which the husband farmed.  Hadlow II contained 133 acres of timberland.

The husband resided with his disabled daughter on the farm called Riverjack.  It contained 100 acres on which the husband raised cows.  The farmhouse was in poor condition; it had only two heated rooms.  The farm was in the village of Deerfield approximately seven miles from Hadlow.  Riverjack was titled in the husband's name alone.

The third farm known as Epidarus was located in Rockbridge County some distance from the other farms.  It contained 160 acres of which 53 were open and the remainder cut-over timber.  At the wife's insistence, the husband purchased it in 1971.  The wife originally wanted to develop it as a land restoration project, but nothing was done with the farm for many years.  It contained no electricity, plumbing, or water.

The commissioner's report offered two alternatives for allocating the real estate.  The first distributed Hadlow I (the residence) to the wife and distributed Hadlow II, Riverjack, and

-

Epidarus to the husband.  The second alternative distributed Epidarus to the wife and Hadlow I, Hadlow II, and Riverjack to the husband.  After hearing the exceptions to the commissioner's report and approving it, the trial court gave the parties 21 days to select their preference of the two recommended alternatives.  The wife did not select one of the alternatives but filed a new plan of distribution.  She wanted all of the Hadlow property, which required her to incur $48,589 of debt.  The trial court rejected her proposal and selected the commissioner's second alternative.

From 1966 when the wife broke a number of ribs, she suffered from osteoporosis, which became progressively worse. The wife had a severely compressed spine, moved with extreme difficulty, and appeared to be in constant pain.  She suffered from hypertension, hypothyroidism, urinary tract infections, and glaucoma.  Her health was precarious, and she could not attend the final hearing.  She was recovering from a broken hip, living at her grandson's house, and not able to return to her own home without continuous live-in care.  Her memory and mental processes were seriously impaired and serious enough that her attorney suggested that a guardian ad litem was required.

Over the course of the litigation, the trial court observed the wife's physical condition and its deterioration.  The trial court expressed deep concern about her ability to live at Hadlow, which it knew to be in a remote, isolated area far

-

removed from medical services. The trial court considered her plan impracticable because it required the wife to service $48,589 debt without the means to do so. The trial court recognized that Epidarus had been a sound investment that the wife could sell. The trial court expressed concern that, while her attorney advised that the wife intended to return to Hadlow with a full-time care provider, the attorney was not familiar with the property or its isolation and had only talked with her son, not with her.

It is clear that the trial court did not intend for the wife to reside in the uninhabitable house at Epidarus but found it unrealistic to expect that she could live at Hadlow. The trial court reviewed the record, heard the arguments of counsel, and concluded the wife's proposal was not practicable for an 84-year-old woman in poor health. The trial court also felt the commissioner's plan permitted the husband to earn income by continuing to farm both Riverjack and Hadlow. From the record, we conclude the trial court properly exercised its discretion when allocating the properties among the parties.

For the reasons stated, we affirm.

<u>Affirmed.</u>

-