COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


JAMES ALTON TUCKER

v.        Record No. 2008-09-2

DARLENE WILMOTH-TUCKER

MEMORANDUM OPINION[*] BY
JUDGE CLEO E. POWELL
MAY 18, 2010


FROM THE CIRCUIT COURT OF HANOVER COUNTY
John R. Alderman, Judge Designate

Lawrence D. Diehl (Brandy M. Poss; Barnes & Diehl, P.C., on
briefs), for appellant.

Charles E. Powers (Batzli Wood & Stiles, PC, on brief), for
appellee.


James Alton Tucker ("husband") appeals an order of the Circuit Court of Hanover

County granting Darlene Wilmoth-Tucker ("wife") spousal support and an equitable distribution

award. On appeal, husband contends (1) the trial court failed to properly classify the increase in

value of his separate property; (2) the trial court erred in awarding wife retroactive spousal

support after making a finding that the award of spousal support was not retroactive; (3) the trial

court was without statutory authority to order husband to make health insurance payments that

were "not in the nature of spousal support" and not deductible by husband or taxable to wife;

(4) the trial court failed to make any findings regarding the dates by which husband was to make

certain equitable distribution payments to wife; (5) the trial court failed to make a ruling

regarding who was responsible for paying the expense of transferring portions of the parties' real

property; (6) the trial court failed to properly classify, value, and distribute the parties' IRAs; and

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(7) the trial court failed to classify, value, or distribute the lien on the parties' marital home. We agree in part and disagree in part.

BACKGROUND

Husband and wife were married on May 25, 1985, and separated on November 18, 2004. Wife subsequently filed a bill of complaint seeking divorce on November 22, 2004. During the marriage, husband worked for the family business – Old Dominion Lock Co., Inc. ("Old Dominion"). Wife, on the other hand, was primarily a homemaker, but also assisted husband with his duties at Old Dominion.

During the marriage, the parties owned two homes: the primary marital residence ("Mechanicsville house") and a vacation property ("Gloucester house"). Upon the parties' separation, husband stayed in the Mechanicsville house, and wife moved to the Gloucester house.

On December 30, 1999, husband's father gifted him thirteen shares of stock in Old Dominion. On December 31, 1999, husband's mother gifted him another thirteen shares of stock in Old Dominion. On January 1, 2000, husband's father further gifted him another 249 shares of stock in Old Dominion, and husband's mother gifted him another thirteen shares of stock in Old Dominion. In total, husband was gifted 288 shares of stock. Also on January 1, 2000, Old Dominion entered into a Stock Redemption Agreement with husband's father. Pursuant to the Agreement, Old Dominion agreed to purchase husband's father's remaining shares of Old Dominion stock.

A two-day trial was held in the Circuit Court for the County of Hanover on December 16-17, 2008, to determine the grounds of divorce, equitable distribution, and spousal support. At trial, the parties presented evidence regarding the value of both homes. The evidence showed that the Mechanicsville house was valued between $255,000 and $258,000. These valuations did

not take into account any mortgages or liens on the property. Husband noted, however, that immediately before the parties separated, wife took out $30,000 from the home equity line of credit on the Mechanicsville house.

Furthermore, evidence was presented regarding the value of the parties' IRA accounts. Husband's IRA was valued at $182,472, whereas wife's IRA was valued at $15,302.

Prior to the trial, husband and wife stipulated that 34.59% of the Old Dominion stock was marital property.[1] Further, both parties recognized that the 288 shares were husband's separate property, but the increase in value that occurred during the marriage was marital property. See Code § 20-107.3. At trial, both parties presented experts to establish the value of the marital share of Old Dominion and the increase in value of husband's 288 separate shares of stock. Regarding the value of the marital share, wife's expert, William Dacey ("Dacey") calculated the value at $726,225; husband's expert, Robert Raymond ("Raymond"), calculated the value at $504,225.

Regarding the increase in value of the 288 separate shares of stock, Dacey calculated that, between the date the shares were gifted and the date of the hearing, the shares increased in value by $745,204. Raymond, on the other hand, calculated the value on four separate dates. Wife objected to the entry of any valuation that used a "valuation date other than the date of the . . . evidentiary hearing," as husband had not moved for an alternate valuation date. The trial court inquired about the need for four dates, and Raymond responded, "there are four dates that may be relevant to the classification of [husband]'s interest." Raymond went on to explain that,

---

[1] We note that, at the time of the trial, there was a total of 575 shares of Old Dominion stock outstanding. Accordingly, based on the parties' stipulation, 199 shares of Old Dominion stock were marital property. However, the evidence demonstrates that 107 shares were owned by Cynthia Tucker, husband's sister, and 288 shares were husband's separate property, leaving only 180 shares (31.30%) as marital property.

the reason that those four dates may be relevant, if the Court finds . . . that the increase between the date that he acquired those shares by gift [and] the date of separation was because of [husband's] active effort, then that increase would be classified as marital property. And any increases occurring after the date of separation that occurred because of his active effort would be his separate property.

The trial court accepted all four valuations for the purpose of classification. Based on these valuations, between the date of gifting to the date of the hearing, the separate shares increased in value by approximately $537,699.[2] A further breakdown of Raymond's valuations reveals that, between the date of gifting and the date of separation, the value of the separate shares increased by approximately $158,541; meanwhile, post-separation, the value of the separate shares increased by approximately $379,158.

In a letter opinion dated April 23, 2009 ("letter opinion"), the trial court made a number of findings. The trial court valued the marital share of Old Dominion at $584,551.33, which was "one-third of the spread between the two experts," and awarded wife $292,275.66.[3] The trial court valued the increase in value of husband's 288 separate shares of stock to be $658,153.49 and awarded wife $329,076.74.

The trial court further found that, based on the 2008 tax assessments, the Mechanicsville house was worth $255,000 and the Gloucester house was worth $345,500. Relying on the fact that wife had made significant improvements on the Gloucester house post-separation and that

---

[2] Although Raymond never specifically testifies to this total, it can be easily derived by subtracting the value of each share of stock at the date of gifting ($1,296.47) from the value on the date of the hearing ($3,163.48), and then multiplying the difference by 288. We note, however, that these totals are based purely on Raymond's valuations and are by no means binding.

[3] We note, however, that in calculating these values, it appears that the trial court may have inadvertently used the value Dacey provided for the increase in value of the 288 separate shares ($745,204) instead of the value he provided for the value of the shares that were marital property ($726,225).

- 4 -

significant improvements were still needed (specifically, over $20,000 in repairs to a sea wall),

the trial court determined that it was equitable to award husband the Mechanicsville house and

wife the Gloucester house without any further compensation.

The trial court also determined that husband's IRA was marital property. The trial court

valued husband's IRA at $197,774, and awarded wife $63,962. The trial court made no findings

regarding wife's IRA.

Regarding spousal support, the trial court stated:

> The parties greatly disagree as to [husband's] income, and his
> capacity to pay spousal support. [Wife] also claims that [husband]
> bears retroactive duties of support. The Court is convinced that the
> parties shared financial responsibility for their child after the
> separation. No evidence indicates that [husband] was obligated to
> provide child support to [wife], or vice-versa. It is also clear that a
> duty of spousal support was not in place. [Wife] never asked for
> support, and she freely accessed the marital assets to support
> herself.
>
> Going forward, however, [husband] is obligated to support [wife].
> The Court finds that the best calculation of [husband's] income is
> the five-year pre-separation average of $136,000 per year. A
> guideline support obligation of $2,414 per month is thus ordered.
>
> [Husband] is further ordered to provide for [wife's] health
> insurance in the amount of $1,400 per month.

The final decree of divorce ("final decree") was entered on August 6, 2009. The rulings

of the letter opinion were incorporated by reference into the final decree. The trial court ordered

that husband had to pay wife any equitable distribution payments within thirty (30) days of the

date of entry of the final decree. Furthermore, the trial court ruled that husband was solely

responsible for transferring the deeds on both properties to the respective parties "at his

expense." Finally, regarding spousal support, the final decree stated:

> It is further ORDERED that [husband] shall pay the sum of
> $2,414.00 per month in spousal support retroactive to December 1,
> 2004 and continuing on the first day of every month thereafter.

[Husband] is in arrears as of May 1, 2009 [in the amount] of $128,356.00, plus interest.

It is further ORDERED that upon entry of the Final Decree of divorce [husband] shall pay to [wife] the sum of $1,400.00 per month in addition to spousal support to assist [wife] in paying health insurance premiums. This is not in the nature of spousal support, and shall not be taxable to [wife] nor deductible to [husband] for income tax purposes.

Husband appeals.

## ANALYSIS[4]

### 1. Classification and Valuation of Husband's Separate Shares

Husband argues that the trial court failed to properly classify the increase in value of his 288 separate shares. Specifically, husband contends that the trial court's classification of the post-separation increase in value as marital property is contrary to the trial court's factual finding that the continued increase in value of Old Dominion stock after the date of separation was due

---

[4] Wife argues that a majority of husband's objections were not timely raised before the trial court and therefore Rule 5A:18 bars our consideration of those issues. She contends that, because husband's "Amended Objections to Final Decree" were not presented to the trial court until after the final decree was entered, he "did not provide the trial court the opportunity to address or correct any alleged errors." With one exception (discussed below), we disagree with wife.

The sequence of events is important. Husband initially submitted his "Objections to Final Decree" on July 17, 2009. The final decree was entered on August 6, 2009. On August 7, 2009, husband sent his "Amended Objections to Final Decree" to the trial court; however, they were not received until August 10, 2009.

We begin by noting that, at the time the amended objections were submitted, the final decree had not yet become final and was still subject to modification by the trial court. See Rule 1:1. Additionally, it is apparent that the trial court had the opportunity to consider the amended objections, as there is a handwritten note dated August 11, 2009, indicating that the "Amended Objections to Final Decree" were mailed to the parties and their attorneys "per instruction from JRA [John R. Alderman]." We further note that husband's "Amended Objections to Final Decree" were included with the rest of the final decree, whereas his initial "Objections to Final Decree" were not. Thus, it is clear based on the facts before us, that the trial court considered the "Amended Objections to the Final Decree" to be the actual objections rather than the original "Objections to Final Decree." Accordingly, we hold that the amended objections were properly preserved for our consideration, as the trial court "was on notice of [husband's] objections and it had the opportunity to rule intelligently on those objections." Scialdone v. Commonwealth, 279 Va. 422, 441, 689 S.E.2d 716, 726 (2010).

- 6 -

to his active effort. As a result, the trial court erred in finding that the marital portion of the increase in value of the 288 gifted shares was $658,153.49, the total increase in value of the shares. Wife, however, argues that this is an issue of valuation as opposed to one of classification. Wife contends that, absent a motion by husband to set the valuation date as the date of separation, the trial court was obligated to use the date of the hearing as the valuation date and was correct in classifying the total increase in value of the separate shares as marital. See Code § 20-107.3(A). Wife also contends that, although husband argues that the trial court erred as matter of law by including the post-separation increase in value of the gifted shares, he provides no basis to allege that the trial court's finding included the post-separation appreciation. We agree with husband.

## A. Classification

We begin by recognizing that equitable distribution is a process.

> There are three basic steps that a trial judge must follow in making an equitable distribution of property. "The court first must classify the property as either [separate, marital, or part separate and part marital property]. The court then must assign a value to the property based upon evidence presented by both parties. Finally, the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)."

Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 576 (1992) (quoting Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991)).

> Marital and separate property are well defined. Property titled in the names of both a husband and a wife and all other property acquired by either of them "during the marriage which is not separate property" is marital property. Code § 20-107.3(A)(2). Property acquired by either spouse "during the marriage, and before the last separation of the parties," is presumed to be marital property. Id. Separate property is that acquired by either party (1) "before the marriage," (2) "during the marriage by bequest, devise, descent, survivorship, or gift" from someone other than the other spouse and (3) "during the marriage in exchange for or from

- 7 -

the proceeds of sale of separate property," if maintained as separate property. Code § 20-107.3(A)(1).

Dietz v. Dietz, 17 Va. App. 203, 208-09, 436 S.E.2d 463, 467 (1993) (footnotes omitted).

Code § 20-107.3(A)(3)(a) specifically provides that the increase in value of separate property that occurs during marriage "shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases." Further, "a marriage will be deemed to have ended for purposes of classifying property as marital on the date of the last separation." Dietz, 17 Va. App. at 209-10, 436 S.E.2d at 467.

> When the defunct partnership is dissolved, the property acquired through partnership contributions must be identified and classified as marital property. Code § 20-107.3(A)(2)(i); Mitchell v. Mitchell, 4 Va. App. 113, 117, 355 S.E.2d 18, [20] (1987) . . . . Generally, property acquired by one partner after the last separation when "at least one of the parties intends that the separation be permanent" is not "acquired . . . during the marriage" or as part of the marital partnership and will not be marital property, unless it was obtained, at least in part, with marital funds. See Price [v. Price], 4 Va. App. [224,] 231-32, 355 S.E.2d [905,] 909 [(1987)]. Property acquired by one partner totally separate and apart from the marital partnership does not imbue the other partner or spouse with rights and equities in such property. *Where partnership efforts have contributed nothing to the acquisition or maintenance or preservation of the property, no basis exists for its being classified as a marital asset.*

Id. at 210, 436 S.E.2d at 468 (emphasis added).

In the present case, it is undisputed that husband's 288 shares are his separate property. Similarly, it is undisputed that any increase in value of those shares that occurred during the marriage was due to husband's personal efforts and is therefore marital property under Code § 20-107.3(A)(3)(a). Any increase in value of those shares that occurred after the date of separation due to husband's personal efforts is husband's separate property. See Dietz, 17 Va. App. at 210, 436 S.E.2d at 468. Here, the trial court made a specific factual finding that the increase in value that occurred after the date of separation was due, at least in part, to husband's

personal efforts.[5]  By finding that "[t]he appreciation belongs to the marital estate," however, the

trial court failed to take husband's post-separation personal efforts into account.  Thus, in finding

that the entire increase in value of those shares was marital property, the trial court erred as a

matter of law.

### B.  Valuation

The classification and valuation of certain property types may require the use of several

different dates due to the fluid nature of those property types.

> At the outset, it is important to draw a clear distinction between
> [the] date on which the parties' assets are *classified* and the date on
> which they are *valued* – the *date of valuation*.  These dates appear
> at first to be similar, but the policies behind them are very
> different.  The date of classification should ideally be set at the
> actual termination point of the marital partnership, so that assets
> which are not actual fruits of the parties' joint efforts are not
> included in the marital estate.  The date of valuation, by contrast,
> should ideally be set as close to trial as possible, so that the court's
> division of property is based upon the most current financial
> information available.  These differing policies frequently require
> that [the] court use different dates for purposes of classification
> and valuation, and it is therefore important to determine each date
> independently of the other.

1 Brett R. Turner, Equitable Distribution of Property § 5.28 (3d ed. 2005) (emphasis in original).

We recognize that, under certain circumstances, in order to properly classify property, it

may be necessary to use the value of the property at various key dates.  This is especially true

when, much like the present case, the trial court is dealing with property that is directly affected

by the personal efforts of one or both of the parties after separation.  In situations such as this

one, the value of the stock on the date of separation is crucial in classifying the property, i.e.

---

[5] Although wife argues that the husband provided no basis to allege that the trial court's findings included appreciation following the parties' separation, the trial court's specific factual finding that the increase in value that occurred after the date of separation was due to husband's personal efforts clearly demonstrates otherwise.

determining what portion of the increase in value is marital property and what portion is separate property.

Recognizing that equitable distribution is a three-step process and classification must come before valuation, we therefore must reject wife's argument regarding husband's failure to ask the trial court to set an alternate valuation date. The relevant portion of Code § 20-107.3(A) states:

> The court shall determine the value of any such property as of the date of the evidentiary hearing *on the evaluation issue*. Upon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

(Emphasis added).

Wife's argument fails to take into account the fact that the valuations on the date of gifting[6] and the date of separation do not serve the same function as the valuation on the date of the hearing. As previously discussed, the value of the stock on the date of gifting and the value on the date of separation merely allows the court to properly classify the increase in value of the property. It is only after the property has been classified as either marital or separate that the trial court can properly begin the process of assigning value and determining equitable distribution of the marital portion.

> The function of the Court is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property. In order to accomplish this purpose, the Court must value the assets in a manner that is fair and equitable to both parties.

---

[6] We note that wife does not raise this argument regarding the date of gifting, even though neither party filed a motion seeking to establish it as an alternate date of valuation.

Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987); see also Rowe v. Rowe, 33 Va. App. 250, 264, 532 S.E.2d 908, 915 (2000); Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 790-91 (1991).

It is apparent that the valuation on the date of the hearing serves the purpose of ensuring an equitable distribution of the property *after* the property has been properly classified. Similarly, the valuation on the date of the hearing allows the court to account for such factors as the passive increase in value, which would affect both the marital and separate portions equally.

Were we to hold that, when classifying property, the trial court may only consider the value of the property on the date of gifting and on the date of the hearing, it would lead to an inequitable result. For example, assume that on the date of gifting, the property had a value of $100, on the date of separation, the property had a value of $150, and on the date of the hearing, the property had a value of $200. Assuming that the increase in value was entirely due to the personal efforts of one of the parties, it is clear that the marital portion is only $50.[7] However, under wife's approach, classification and valuation would both occur on the date of the hearing. As such, the marital portion would be determined to be $100, regardless of whether one of the parties demonstrated that the increase in value occurred solely due to personal efforts post-separation.

Therefore, because the valuation date for determining the equitable distribution of the property serves a different purpose from the valuation dates that are used to properly classify the property, husband was not required to make a motion for an alternate valuation date under Code § 20-107.3. Although the trial court used the appropriate valuation date for equitable distribution

---

[7] We recognize that a number of factors could continue to affect the value of both the marital and separate portions equally after the property has been classified, such as a passive increase or decrease in value. As such, this example should not be taken to mean that the date of separation acts to lock-in the value of the marital share. Rather, the date of separation provides the necessary reference point to properly classify the property for future valuation.

purposes, it improperly classified the post-separation increase in value of husband's separate shares. Accordingly, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

## 2. Retroactive Spousal Support

Husband next argues that the trial court contradicted itself by stating in the letter opinion that husband is obligated to support wife "going forward," and then ordering retroactive spousal support in the final decree. Wife, on the other hand, contends that the trial court was merely reciting the parties' arguments in the letter opinion and not making a contradictory ruling. She argues that, because the trial court never specified a starting date for spousal support in the letter opinion, a starting date cannot be implied. Therefore, the trial court was not bound by the letter opinion in determining the retroactivity of the spousal support. We disagree.

> "When construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." Fredericksburg Construction v. J.W. Wyne Excavating, 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000) (citing Rusty's Welding Service v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999)). Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously. Rusty's Welding Service, 29 Va. App. at 130, 510 S.E.2d at 261. Furthermore, an order must be interpreted within its four corners. United States v. Armour & Co., 402 U.S. 673, 682 (1971).

Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 411-12 (2002).

As an initial matter, we note that the trial court specifically stated that the letter opinion "is hereby affirmed, ratified and incorporated, but not merged, herein by reference." As such, the letter opinion is considered part of the final decree.

In its letter opinion, the trial court specifically stated, "*Going forward*, however, [husband] is obligated to support [wife]." (Emphasis added). The clear implication being that, prior to the date of the letter opinion (April 23, 2009), husband had no obligation to support wife,

and therefore wife was not entitled to any retroactive spousal support before that date. Thus, the trial court's subsequent ruling that husband owed "spousal support retroactive to December 1, 2004," makes the final decree internally inconsistent. As such, we reverse the trial court's award of retroactive spousal support and arrearages in the amount of $128,356. We further remand the issue to the trial court to determine the proper start date of spousal support not inconsistent with this opinion.

### 3. Statutory Authority to Order Health Insurance Payments

Husband argues that the trial court erred in awarding wife $1,400 per month for wife's health insurance, as the award was "not in the nature of spousal support" and not deductible by husband or taxable to wife. Specifically, husband contends that the trial court did not have the statutory authority to make such an award as it is neither spousal support nor equitable distribution. Wife argues that husband never raised these issues before the trial court, and therefore Rule 5A:18 bars our consideration on appeal.

We begin by noting that, unlike husband's other arguments, this argument was not included in husband's "Amended Objections to Final Decree." However, this Court has previously recognized that "Rule 5A:18 may not be invoked to bar our consideration of an appeal which attacks the jurisdiction of the circuit court." Jones v. Division of Child Support Enforcement ex rel. Owens, 19 Va. App. 184, 191, 450 S.E.2d 172, 177 (1994). Similarly, it is widely recognized that "jurisdiction in divorce suits is purely statutory and 'cannot be acquired by the courts inferentially or through indirection.'" Lapidus v. Lapidus, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984) (quoting Johnson v. Johnson, 224 Va. 641, 645, 299 S.E.2d 351, 353-54 (1983)) (citations omitted). "[T]he General Assembly has conferred jurisdiction on the trial court to resolve divorce and related issues in specific, detailed language." Day v. Day, 8 Va. App. 346, 348-49, 381 S.E.2d 364, 366 (1989). "The trial court is authorized by statute to

- 13 -

order monetary payments or awards only in the form of spousal support (Code §§ 20-107.1, 20-109), child support (Code §§ 20-107.2, 20-108), or monetary awards made pursuant to Code § 20-107.3 [commonly understood to be equitable distribution of the marital property]." Id. at 349, 381 S.E.2d 366. "The provisions of a decree must be declared void if the character of the judgment was beyond the power of the court to render." Id. As husband attacks the jurisdiction of the trial court to order the health insurance payments, Rule 5A:18 does not apply.

As discussed in the previous section, the letter opinion was incorporated by reference into the final decree. As the trial court's initial mention of the health insurance payments is included in the "Child and Spousal Support" section of the letter opinion, it is apparent that the trial court intended the health insurance payments to be a form of spousal support. However, in its final decree, the trial court states:

> It is further ORDERED that upon entry of the Final Decree of divorce, [husband] shall pay to [wife] the sum of $1,400 per month in addition to spousal support to assist [wife] in paying health insurance premiums. This is not in the nature of spousal support, and shall not be taxable to [wife] nor deductible to [husband] for income tax purposes.

Thus, we must consider whether the inclusion of the phrase "not in the nature of spousal support" is inconsistent with the trial court's initial determination that the health insurance payments are spousal support. We hold it is not.

This Court has previously examined the implications of the phrase "in the nature of support." See Stacy v. Stacy, 53 Va. App. 38, 669 S.E.2d 348 (2008) (en banc). In Stacy, the parties entered into a property settlement agreement whereby they expressly waived spousal support. Id. According to the property settlement agreement, the wife received the marital home, but the husband was responsible for paying the mortgage on the home. Id. at 41, 669 S.E.2d at 349. Additionally, the agreement contained language stipulating that "while husband's mortgage payments 'were not direct support payments being made to wife,' they were 'in the

nature of support,' and therefore 'non-dischargeable' by husband in any bankruptcy proceeding."

Id. at 43, 669 S.E.2d at 350. Upon learning that the wife had entered into a relationship

analogous to marriage, the husband filed a petition to terminate his mortgage payment

obligation. The husband argued that, because the mortgage payment was "in the nature of

support," it was subject to termination under Code § 20-109(A). This Court disagreed.

> As used in the PSA, the phrase "in the nature of support" was technical language from the Bankruptcy Code and limited to its bankruptcy context. Husband's third party debt obligation was thus never spousal support as contemplated by Code § 20-109. . . . The obligation can still be viewed, however, as "in the nature of support" so as to render it non-dischargeable under bankruptcy law.

Stacy, 53 Va. App. at 49, 669 S.E.2d at 353.

Viewed in conjunction with language relating to the tax implications of the payments, it

is evident that the phrase "not in the nature of spousal support" was technical language relating

to the tax code and limited to the income tax context. Thus, although factually dissimilar, the

rationale of Stacy is applicable here. In Stacy, the mortgage payment was obviously not spousal

support, but it was characterized as "in the nature of [spousal] support" for bankruptcy purposes

only; in the present case, it is apparent that the health insurance payments are spousal support,

but they are characterized as "not in the nature of spousal support" for income tax purposes only.

It is worth noting that spousal support is taxable as "gross income" under the Internal

Revenue Code, if "the divorce or separation instrument does not designate such payment as a

payment which is not includible in gross income under this section and not allowable as a

deduction under [26 USCS § 215]." 26 USCS § 71. While we make no decision as to whether

the language in the final decree is sufficient to avoid potential tax consequences, it is apparent

that the language was included for that purpose. Accordingly, we hold that the health insurance

payments are spousal support. Therefore, the trial court did not err in ordering husband to pay

$1,400 per month for wife's health insurance, as the trial court had the statutory authority to make such an award as a form of spousal support.  See Code § 20-107.1.

### 4.  Dates Relating to Equitable Distribution

Husband next argues that the trial court abused its discretion by entering a final decree that required him to pay all of the monetary awards to wife "within thirty days of the date of the entry of the Final Decree."  Husband contends that, because the letter opinion provided no due dates for the payments and the trial court never held a hearing on whether he could make those payments within such a short period of time, the trial court erred.  We disagree.

> On appeal, the trial court's award of equitable distribution will not be reversed "unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities."

von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997) (quoting Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990) (citations omitted)).

Code § 20-107.3(K) specifically provides that "[t]he court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section."  This includes the authority to "[o]rder a date certain for transfer or division of any jointly owned property under subsection C."  Code § 20-107.3(K)(1).

It is important to note that husband is, in effect, arguing that the trial court must include all of its rulings in a letter opinion before it can enter a final decree.  Husband, however, points to no authority to support this notion.  We further note that husband never asked the trial court to hold a hearing on whether he could make the necessary payments within thirty days; similarly, nothing in Code § 20-107.3(K) requires the trial court to hold such a hearing.  As such, we cannot say that the trial court abused its discretion by not including all of its rulings in the letter opinion or by not holding a hearing that was neither requested nor required.

## 5. Transfer of Real Property

Husband also argues that the trial court erred when it required husband to prepare a deed, at his expense, to transfer the Gloucester house to wife. Specifically, husband contends that "the [trial] court made no such ruling," and therefore abused its discretion. We disagree.

As an initial matter, we note that it is unclear as to what husband is referring to when he argues that "the [trial] court made no such ruling." In its final decree, the trial court specifically stated:

> It is further ORDERED that [wife] shall have exclusive use, possession and sale ownership of the parties' Gloucester, Virginia house valued at $345,500, based on the 2008 tax assessment. [Husband] shall prepare a Deed at his expense and [husband] shall sign the same within 30 days of the date of the entry of the Decree. There is no mortgage to refinance.

Thus, the trial court clearly ruled that husband was responsible for preparing the deed to transfer the Gloucester house to wife.

Based on the placement of his argument, however, we assume that husband's argument is along the same lines as his above argument regarding the dates relating to equitable distribution. However, it is clear that the trial court's requirement that husband prepare the deed at his expense was merely the means by which the trial court sought to effectuate the equitable distribution findings. See Code § 20-107.3(K) (stating that the trial court has the authority to make any orders "necessary to effectuate and enforce any order entered pursuant to this section"). As this is well within the trial court's statutory authority to effectuate its orders, it cannot be said that the trial court abused its discretion.

## 6. IRAs

Husband next argues that the trial court erred in failing to classify wife's IRA. Wife concedes that "there was no evidence before the trial court that would support a finding that Husband's IRA alone was worth $197,774." She argues, however, that it is apparent that,

because $197,774 is the cumulative value of both husband's IRA and wife's IRA, the trial court did, in fact, take both IRAs into account.

At the time of valuation, the total value of both IRAs was $197,774: wife's IRA was valued at $15,302; husband's IRA was valued at $182,472. In the letter opinion, however, the trial court incorrectly attributed the total value of both IRAs to husband and awarded wife $63,962. In the final decree, the trial court awarded wife $63,962, "representing one-half of the marital share of the Defendant's IRA," but makes no mention of wife's IRA.

"Virginia's statute 'mandates' that trial courts determine the ownership and value of all real and personal property of the parties." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987).

> Upon decreeing the dissolution of a marriage . . . the court, upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3.

Code § 20-107.3(A).

> [A] court may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record. The court may not refuse or fail to give parties a reasonable opportunity to develop and present evidence of value. Nor can the court arbitrarily reject credible evidence of value merely because other evidence might be more accurate, convincing, desirable or persuasive.

Bowers, 4 Va. App. at 618, 359 S.E.2d at 551.

As it is clear that the trial court failed to classify wife's IRA, we reverse the trial court's ruling and remand for further proceedings.

## 7. Lien on the Mechanicsville House

Husband's next contention is that the trial court erred in failing to take into account the $30,000 in equity that wife took out on the Mechanicsville house. Husband notes that, in evaluating the Gloucester house, the trial court took into account the number of improvements wife made to the house and the fact that it needed a new sea wall; however, in evaluating the Mechanicsville house, the trial court only considered the assessed value of the property, without considering any liens or mortgages against the property. Wife argues that such an unequal division of marital property is within the trial court's discretion and there is no evidence that the trial court abused its discretion. We agree with husband.

While the trial court is under no obligation to equally divide the property, it is obligated to classify and apportion the assets as well as the debts. Code § 20-107.3 states

> The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E.

Furthermore, this Court has previously recognized that "when property is acquired, and, similarly, when debt is incurred, a trial court must determine the purpose of expenditure in order to classify property as marital or separate or to 'allocate' debt as marital or separate." Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460 S.E.2d 591, 595 (1995). In the present case, it is clear that the trial court failed to classify the debt represented by the $30,000 wife removed from the equity line of credit. Also, it appears that the trial court failed to properly value the Mechanicsville house, as it is apparent that the trial court did not take the equity line of credit into account. The record clearly demonstrates that evidence of the equity line of credit was presented to the trial court by husband and wife acknowledged its existence. Accordingly, we reverse the trial court's ruling and remand for further proceedings to properly classify and allocate the debt.

- 19 -

## 8. Attorney's Fees

Finally, both husband and wife seek an award of attorney's fees and costs incurred on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

After a review of the entire record, we decline to award either party attorney's fees on appeal.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's award of equitable distribution with regard to the increase in value of husband's separate shares of Old Dominion stock, the parties' IRAs, and the valuation of the Mechanicsville house, and remand for further proceedings consistent with this opinion. We further reverse the trial court's award of retroactive spousal support and remand the issue to the trial court to determine the proper start date of spousal support consistent with this opinion. The decisions of the trial court requiring husband to pay all of the monetary awards to wife within thirty days of the date of the entry of the final decree and to prepare the deed transferring the Gloucester house to wife at his expense are affirmed. Finally, we deny the parties' requests for attorney's fees.

Affirmed in part,
reversed in part,
and remanded.
